EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br>    Recurrente<br><br>        v.<br><br>Carmen L. Figueroa Santana<br>    Recurrida | Certiorari<br><br>2001 TSPR 112<br><br>154 DPR ____ |
| --- | --- |

Número del Caso: CC-2000-922

Fecha: 23/julio/2001

Tribunal de Circuito de Apelaciones:
                                    Circuito Regional VI

Juez Ponente:
                                    Hon. Ismael Colón Birriel

Oficina del Procurador General
                          Lcda. Eva S. Soto Castello
                          Procuradora General Auxiliar

Abogados de la Parte Recurrida:
                          Lcdo. Edwin H. Flores Sellés
                          Lcdo. José A. Montijo Román

Materia: Infr. Art. 3.1 Ley de Violencia Doméstica

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

     Recurrente

        v.
                               CC-2000-922

Carmen L. Figueroa Santana
     Recurrida


Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN


San Juan, Puerto Rico, a 23 de julio de 2001


Nos corresponde determinar si para que una persona sea declarada culpable por el delito de Maltrato tipificado en el Art. 3.1 de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. § 631, (en adelante Ley 54), se requiere que el Ministerio Público pruebe como elemento del delito que la persona acusada ha incurrido en un patrón constante de empleo de fuerza física o violencia psicológica en contra de la víctima.

El 3 de junio de 1999 el Ministerio Público presentó dos denuncias contra la recurrida, Carmen L. Figueroa Santana, (en adelante Sra. Figueroa o recurrida), una por infracción al Art. 3.2 de la Ley 54 (maltrato agravado), y otra por infracción al Art. 4 de la Ley de Armas, 25 L.P.R.A. § 414. En la vista preliminar se encontró causa probable para acusar a la recurrida por violación al Art. 3.1 de la Ley 54, que establece el delito de maltrato en su modalidad simple.

La vista del juicio en su fondo se celebró el 7 de septiembre de 1999. El único testigo que declaró fue la víctima, el señor Juan B. Romero Rosa (en adelante Sr. Romero). Éste declaró que convivía con la acusada, que había procreado dos (2) hijos con ésta, y que al momento de ocurrir los hechos ella esperaba otro hijo de él. Además, el Sr. Romero declaró lo siguiente respecto a la forma en que ocurrieron los hechos:

> ...Alguien le dijo a ella que estaba con otra muchacha o algo... y fue al trabajo a hablar conmigo y yo no estaba mirando. Fue a las 2:30 de la tarde... Ella me decía que sí era verdad y yo que no. No hubo falta de respeto ni voz alta ni de parte de ella ni de él. Ella se fue acercando donde mí y cuando me fue a tirar yo me tapé y me raspó el brazo. No vi con lo que tiró, dice que una sortija, porque yo no vi lo que fue... yo estaba mirando al piso cuando veo que levanta la mano para darme, me tapo el brazo.

> ...se imaginaba que con un cuchillo, pero no vio el cuchillo... Cuando se le acercó ella no dijo nada. El no le contestó nada... Ocurrió en el "parking" de su trabajo. Ella se va y él siguió para su trabajo. El llamó la policía, pero no fue. Fue la policía al otro día, el día 3... No recibió atención médica...

Durante el contrainterrogatorio, el Sr. Romero reafirmó esencialmente lo que declaró en el directo en relación con cómo ocurrieron los hechos. También admitió que él había cometido dos (2) delitos de Ley 54 contra la Sra. Figueroa.

De acuerdo a esta prueba, la Sra. Figueroa fue declarada culpable de infracción al Art. 3.1 de la Ley 54. Se le condenó a cumplir 1 año de libertad a prueba, sujeto a la participación de la recurrida en un programa de desvío. Inconforme, la recurrida acudió al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Señaló que el tribunal de instancia erró al encontrarla culpable, ya que "estuvo totalmente ausente de la prueba del Ministerio Público, el patrón de conducta constante de empleo de fuerza física o violencia psicológica según establece la ley".[1]

El Tribunal de Circuito acogió el planteamiento de la apelante y revocó la sentencia dictada por el tribunal de instancia. El foro apelativo concluyó que:

> [E]l delito contemplado en la Ley 54, define ciertos tipos de conducta prohibida o ilegal, las cuales quedan subsumidas dentro de lo que constituye, en el contexto de dicha ley la definición de violencia doméstica. Por tanto, somos de la opinión que conforme a la definición de "Violencia Doméstica" [patrón de conducta constante de empleo de fuerza

---

[1] La recurrida también señaló como error el que no se le permitiese a la defensa presentar en evidencia una sentencia contra la víctima, Sr. Romero, por infracción al Art. 3.1 de la Ley 54. No obstante, la recurrida se limitó únicamente a hacer el señalamiento, sin discutir el error alegado ni en su escrito de apelación ni en su alegato ante el Tribunal de Circuito. Por ésta razón, el foro recurrido no hizo determinación alguna sobre dicho error.

física o violencia psicológica], el Ministerio Público... tiene que probar, como elemento esencial del delito de maltrato un patrón de conducta constante por parte del agresor...

De esta determinación el Ministerio Público recurrió ante nos mediante recurso señalando como único error la conclusión del Tribunal de Circuito de que la conducta tipificada como violencia doméstica, en su modalidad de maltrato, requiere un patrón de conducta constante de empleo de fuerza física, violencia psicológica, intimidación o persecución.

Decidimos revisar y expedimos el recurso. Las partes han comparecido y con el beneficio de sus argumentos procedemos a resolver.

II

La violencia doméstica es uno de los problemas más graves y complejos que confronta nuestra sociedad. En el desarrollo de la política sobre este asunto, debemos dar énfasis a atender las dificultades que las situaciones de violencia doméstica presentan, particularmente a mujeres y menores, para preservar su integridad física y emocional, procurar su seguridad y salvar sus vidas.

El párrafo que antecede forma parte de la declaración de política pública contenida en el Art. 3.1 de la Ley 54, 8 L.P.R.A. § 601. Dicha política pública ha sido reafirmada por este Tribunal, al reconocer que "la violencia doméstica es un mal endémico y una infamia repudiable que aqueja a la sociedad contemporánea. Si algo ha de quedar claro es la política pública en su contra, consagrada en la Ley para la Prevención en Intervención con la Violencia Doméstica...". San Vicente v. Policía de P.R., 142 D.P.R. 1, 2(1996).

Así, al interpretar la Ley 54, no podemos perder de perspectiva la política pública subyacente en la misma, ya que "las leyes hay que interpretarlas y aplicarlas en comunión con el propósito social que las inspira, sin desvincularse de la realidad y del problema humano que persiguen resolver". Pueblo v. Zayas Rodríguez, Op. de 17 de febrero de 1999, 99 J.T.S. 16; Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735 (1992).

Huelga repetir aquí la problemática familiar y social que conlleva la violencia doméstica. Basta ojear día a día los periódicos del país, o ver las noticias televisadas para darnos cuenta que la violencia doméstica es un mal social que, lamentablemente, está arraigado en nuestras comunidades, afectando a todas las clases sociales.

Como regla general, las víctimas más frecuentes de a problemática son las mujeres y niños, grupos que históricamente han sufrido los efectos más desgarradores de la violencia, la pobreza y el discrimen. No obstante, este caso nos presenta la situación particular de una mujer en el lado contrario de la típica ecuación de la violencia doméstica. Se trata de una mujer y madre acusada y convicta por el delito de maltrato en contra de su compañero y padre de sus hijos. No obstante, la Ley 54, aunque generalmente en su

aplicación protege a las mujeres víctimas de maltrato, se creó también para proteger a los hombres que, en ocasiones, también son víctimas silentes de este triste drama.

III

La evidencia presentada y no contradicha por las partes estableció que entre la recurrida y el Sr. Romero ocurrió una discusión motivada por los celos. En medio de esa discusión la recurrida agredió al Sr. Romero con un objeto, quizás punzante, que le causó una lesión leve en el brazo. La recurrida no negó en momento alguno estos hechos, sino que argumentó que para poder ser acusada y convicta del delito imputado, el Estado tenía que probar que ella había incurrido en un patrón de conducta reiterada de maltrato físico o psicológico en contra de su compañero. Esto debido a que el maltrato es una manifestación de la violencia doméstica, concepto que se define en la ley como:

> **[P]atrón de conducta constante de empleo de fuerza física o violencia psicológica, intimidación o persecución** contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, para causarle daño físico a su persona, sus bienes o a la persona de otro para causarle daño emocional. 8 L.P.R.A. § 602(k).

Así, la recurrida señala que debido a que la definición de "violencia doméstica" requiere un **patrón de conducta constante** de fuerza física o violencia, no se puede encontrar a una persona incursa en un delito de violencia doméstica sin que se pruebe dicho patrón. O sea, el planteamiento se reduce a que para que se pruebe el delito de maltrato tipificado en el Art. 3.1 de la Ley 54, se requiere probar, **como elemento del delito**, el patrón de conducta constante de violencia. No tiene razón.

Los tribunales están obligados bajo el principio de legalidad a que la ley penal debe interpretarse restrictivamente, sin menoscabar la intención del legislador, de ser ésta conocida o evidente. Art. 8 del Código Penal de Puerto Rico, 33 L.P.R.A. § 303. Véase, además, Pueblo v. De León Martínez, 132 D.P.R. 746, 750-751 (1993). Cuando una ley en la que se tipifica un delito penal es clara, los tribunales no tienen la facultad de añadirle limitaciones o restricciones que no aparecen en su texto, con el pretexto de interpretarla. Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964). Estas normas de interpretación tienen el propósito de evitar una aplicación de una ley penal que sea inconsistente con el propósito legislativo de ésta.

El Art. 3.1 de la Ley 54 tipifica el delito de maltrato, disponiendo que:

> Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daños físico a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o la persona de otro para causarle grave daño emocional, será sancionada con pena de reclusión por un término fijo de doce (12) meses, excepto que de mediar circunstancias atenuantes se podrá reducir a un término no menor de nueve (9) meses y de mediar circunstancias agravantes podrá aumentarse hasta dieciocho (18) meses. 8 L.P.R.A. § 631.

Al analizar la disposición citada, encontramos que los elementos del delito de maltrato son: (1) empleo de fuerza física o violencia psicológica, intimidación o persecución; (2) contra una persona que haya sido cónyuge del agresor o agresora, o con quien haya convivido, sostenido una relación consensual, o procreado hijos; y (3) que la fuerza o violencia se haya efectuado para causar daño físico a esa persona o sus bienes. Como vemos, entre los elementos del delito no se encuentra el que se pruebe patrón de violencia constante en contra de la víctima.[2] De hecho, al analizar las disposiciones penales de la Ley 54, nos encontramos con que ninguna de éstas utiliza el concepto "violencia doméstica" para criminalizar la conducta constitutiva del delito.

El hecho de que en la Ley se defina violencia doméstica como un patrón de conducta constante, no significa que el Art. 3.1 requiera que la fuerza física utilizada en un incidente particular sea parte de un patrón de conducta relacionado. No es lo mismo el **concepto** violencia doméstica, que es lo que define el Art. 1.3(k), que **fuerza física como elemento del delito de maltrato tipificado en el Art. 3.1 de la Ley 54**. La violencia doméstica, como concepto, se manifiesta generalmente en un patrón de conducta consistente en agresión, maltrato físico, verbal y psicológico. No significa esto que el legislador haya pretendido, en forma alguna, limitar la fuerza física que se requiere para cometer el delito de maltrato a que se pruebe el patrón de conducta constante que, como regla general, implica el concepto violencia doméstica.

La Ley 54 establece un amplio esquema regulador con el propósito de atender la problemática de la violencia doméstica. Así, no sólo establece sanciones de tipo penal, sino que también establece el remedio civil de la orden de protección, Art. 2.1 de la Ley 54, 8 L.P.R.A. sec. 621. La definición de "violencia doméstica" provista en la ley tiene el propósito de facilitar la comprensión y el alcance jurídico de este remedio.

Es por esta razón que de acuerdo con el Art. 2.1 de la Ley 54, 8 L.P.R.A. § 621, la persona que haya sido víctima de "violencia doméstica", o de conducta constitutiva de delito según tipificado en la ley, puede solicitar al tribunal una orden de protección. Vemos pues cómo este artículo distingue entre la conducta a la que se refiere el término "violencia doméstica" y la conducta constitutiva de delito tipificada en los Artículos 3.1, 3.2, 3.3, 3.4 de la Ley 54 de manera que se pueda solicitar una orden de protección contra la persona que haya incurrido en cualquiera de las conductas tipificadas en estos artículos de la Ley, aunque no exista un patrón de conducta.

Por otra parte, otras disposiciones de la Ley 54, como por ejemplo, el Art. 3.11, utiliza el término "violencia doméstica" al ordenar la preparación de informes a los oficiales que intervienen en incidentes de violencia doméstica. También se utiliza dicho concepto en las disposiciones relativas a la función de la Comisión de Asuntos de la Mujer

---

[2] No es necesario resolver aquí, por no estar planteado, si para acusar a una persona de violencia psicológica, intimidación o persecución bajo el

en el esquema regulador de la Ley 54. Como vemos, cuando el legislador quiso utilizar el concepto "violencia doméstica" en disposiciones específicas de la Ley, así lo hizo. En el contexto de dichas disposiciones es que debe aplicarse la definición de "violencia doméstica" establecida en el Art. 1.3(k) de la Ley 54.

La interpretación que propone la recurrente está reñida tanto con la letra como con el espíritu de la Ley 54, y choca con la política pública esbozada en el estatuto. Basta solamente con preguntarse: ¿es lógico y razonable que se interprete el Art. 3.1 de la Ley 54 como que requiere que la persona sea víctima en más de una ocasión de violencia física para que entonces pueda denunciar al agresor o agresora bajo la Ley 54? ¿Debe una persona víctima de agresión por parte de su pareja esperar a ser agredida una segunda, tercera, o cuarta ocasión, para poder cumplir con el requisito de patrón de conducta constante alegadamente necesario para que se incurra en el delito de maltrato según tipificado en la Ley 54?

Definitivamente, una contestación en la afirmativa a estas preguntas nos llevaría a una interpretación absurda de la Ley 54. La recurrida, para salvar su argumento de esta inaudita pero inescapable interpretación, alega que se puede configurar el delito de Maltrato mediante fuerza física con una sola agresión siempre que el Ministerio Público demuestre que la persona imputada ha incurrido en alguna otra conducta constitutiva de violencia doméstica, como un patrón constante de violencia psicológica, intimidación o persecución.

Ciertamente, este razonamiento no tiene base racional alguna en las disposiciones de la Ley 54. Equivale a imponer al Ministerio Público la carga de probar un elemento del delito de maltrato que simplemente la ley no exige. Aunque generalmente, los casos de maltrato por fuerza física implican también intimidación o violencia psicológica, esto no significa que para que se configure dicho delito sea necesario probar que la persona agraviada también fue víctima de violencia psicológica, intimidación y persecución.

La recurrida también alega que en los casos de maltrato mediante fuerza física en los cuales no se demuestre el patrón de conducta constante de fuerza física o violencia psicológica, el agresor siempre podría ser procesado bajo las disposiciones correspondientes del Código Penal de Puerto Rico. Esta aseveración refleja, cuanto menos, poco entendimiento del esquema protector establecido en la Ley 54.

En el Informe Conjunto del Sustitutivo a los Proyectos del Senado 90 y 470 de 25 de junio de 1989, se explica que: "en el sustitutivo ante nuestra consideración se crean los delitos de maltrato y maltrato agravado **los cuales tipifican de forma especial la conducta que constituye violencia doméstica**".[3] (Énfasis suplido). Más adelante continúa diciendo que:

---

Art. 3.1 de la Ley 54, se requiera que se pruebe un patrón de conducta.

[3] Informe Conjunto, pág. 9.

Aun cuando algunos de los elementos mencionados estén presentes en otros delitos, el hecho de que según el proyecto, estén unidos a la relación conyugal o consensual, tipifican particularmente un tipo de conducta que hasta ahora no está sancionada como delito. Dado que el propósito del proyecto de ley e[s] tipificar los delitos de Maltrato y Maltrato Agravado incorporando a éstos elementos no contemplados en los delitos de agresión ya estatuidos, **los nuevos delitos tienen el propósito de distinguir este tipo de conducta delictiva y establecer una pena espec[í]fica para ella.**[4] (Énfasis suplido).

Los delitos de maltrato y maltrato agravado que se tipifican en la Ley 54 crean una modalidad especial del delito de agresión tipificado en el Art. 95 del Código Penal, para atender específicamente las agresiones ocurridas dentro del contexto de la relación de pareja. Alegar que la persona víctima de violencia doméstica puede recurrir a las disposiciones análogas del Código Penal para denunciar a su cónyuge o compañero agresor es ir en contra de las razones mismas por las cuales se creó la Ley 54. Vale citar aquí, además, nuestros pronunciamientos en <u>Pueblo</u> v. <u>Rivera Morales</u>, 133 D.P.R. 444 (1993):

Resulta significativo el hecho de que a pesar de que se aprueba la Ley Núm. 54 se mantuvo vigente la protección del Art. 95(d); un claro reconocimiento de que el problema de la violencia contra la mujer no se limita a una relación de pareja, sino que también persiste el grave problema de la mujer que es víctima de agresión por parte de desconocidos. En otras palabras, el legislador aunque particularizó una modalidad para atenderla con mayor especificidad, ha reconocido que aún existe un problema de violencia generalizada contra la mujer. La Legislatura escogió como instrumento de lucha contra este problema de violencia generalizada la legislación penal, el Art. 95(d).[5]

Por último, la recurrida se apoya en ciertas expresiones en el historial legislativo de la Ley 54, para sostener su argumento, específicamente las que se refieren a la violencia doméstica como "patrón de conducta". No obstante, tomado en su verdadero contexto, lo que surge del historial legislativo es la preocupación especial de los legisladores y de las comisiones de la Cámara y Senado de aprobar una ley que resultase efectiva para atacar la grave problemática de la violencia doméstica, la cual se manifiesta, en la mayoría de los casos, en un patrón continuo de abuso físico y psicológico. Las referencias que se hacen en los debates legislativos y en los informes de las distintas comisiones al "patrón de conducta" de violencia doméstica se refieren más bien a la gravedad del problema que se intentaba remediar con la aprobación de la Ley. **En ninguna parte del historial legislativo se desprende que se requiere como prueba del delito de maltrato un patrón de conducta de violencia.** Como ya hemos indicado, dicha interpretación está en contra de toda la política pública tras la Ley 54, y no está sostenida por las disposiciones específicas que tipifican el delito de maltrato.

IV

---

[4] Informe Conjunto, pág. 12.

[5] Voto particular y de conformidad emitido por la Juez Asociada señora Naveira de Rodón

En conclusión, el Art. 3.1 de la Ley 54, en su modalidad de maltrato mediante fuerza física, no requiere que se pruebe un patrón de conducta constante de violencia. Por tanto, erró el Tribunal de Circuito al concluir que dicho patrón de conducta era elemento necesario para encontrar a la acusada culpable del delito de maltrato establecido en el Art. 3.1.

Tal vez las circunstancias particulares de este caso llevaron al foro recurrido a resolver de la manera en que lo hizo. Como ya mencionáramos, la situación fáctica en que se plantea esta importante controversia no es el cuadro típico de violencia doméstica. Aquí se trata de una joven mujer, que al cometer los hechos constitutivos de agresión contra su compañero, estaba embarazada y bajo la creencia de que éste estaba sosteniendo una relación consensual con otra mujer. Además, el daño físico ocasionado a la víctima, Sr. Romero, fue mínimo. Definitivamente, no estamos frente a la situación clásica de la persona que abusa de su fuerza física y su posición de poder dentro del núcleo familiar para castigar físicamente a su pareja y causarle grave daño corporal.

No obstante, aunque no sea este el cuadro el típico de violencia doméstica, no podemos añadirle elementos adicionales a los delitos tipificados en la Ley 54 por el hecho de que las circunstancias particulares en que ocurra la agresión, o el hecho de que el daño causado a la víctima sea mínimo, nos haga sentir compasión por la persona acusada. Precisamente, la política pública tras la Ley 54 es lograr que las agresiones entre parejas, por insignificantes que parezcan, no pasen desapercibidas y que no sean consideradas como crímenes pequeños o de menor importancia. Por el contrario, al primer aviso de violencia, la víctima debe tomar las medidas necesarias para lograr que la situación no vuelva a repetirse, y así evitar tragedias mayores como las que día a día cubren de luto a más familias en nuestro país.

Por todos estos fundamentos, procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones.


Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrente

       v.                              CC-2000-922

Carmen L. Figueroa Santana

    Recurrida

SENTENCIA

San Juan, Puerto Rico, 23 de julio de 2001

      Por los fundamentos expuestos en la Opinión que antecede, se revoca la sentencia del Tribunal Circuito de Apelaciones.

      Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita. El Juez Asociado señor Rebollo López disiente sin opinión escrita. El Juez Presidente señor Andréu García no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo