CC-2000-547                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Benigno Roldán López<br><br>    Recurrido<br><br>        v.<br><br>El Pueblo de Puerto Rico<br><br>    Peticionario | Certiorari<br><br>2002 TSPR 117<br><br>157 DPR \_\_\_\_ |

Número del Caso: CC-2000-547

Fecha: 12 de septiembre de 2002

Tribunal de Circuito de Apelaciones:
                        Circuito Regional I

Juez Ponente:
                        Hon. Dolores Rodríguez de Oronoz

Oficina del Procurador General:

                        Lcda. Yasmín Chaves Dávila
                        Procuradora General Auxiliar

Abogados de la Parte Recurrida:

                        Lcda. Wanda T. Castro Alemán
                        Lcda. Samaris Benítez Santiago

Materia: Ley 54 Artículo 3.1

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

                               CC-2000-547

      v.

Benigno Roldán López

    Recurrido

PER CURIAM

San Juan, Puerto Rico, a 12 de septiembre de 2002

I

Por hechos ocurridos el 14 de octubre de 1999, el señor Benigno Roldán López fue acusado de infracciones a los Arts. 3.1 (Maltrato) y 3.3 (Maltrato mediante amenaza) de la Ley 54, en contra de su esposa, la Sra. Ada Tavárez Echevarría. La conducta maltrante consistió en varios puños que el Sr. Roldán le propinó en el área de la espalda a la Sra. Tavárez.

Se celebró juicio por jurado, que rindió veredicto de culpabilidad en cuanto al Art. 3.1 y de no culpable por violación al Art. 3.3. Posteriormente, el tribunal de instancia dictó sentencia en la cual le concedió al convicto los beneficios

del régimen de libertad bajo palabra, sujeto a que participara en un programa de educación y adiestramiento para personas que incurren en conducta maltratante (Programa de Agresores), por un término de treinta y seis (36) meses. No obstante, el tribunal dispuso que si en el término de doce (12) meses el Sr. Roldán cumplía satisfactoriamente con el programa de desvío, se daría por cumplida la sentencia.

El recurrido apeló esta determinación ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Dicho foro revocó el dictamen del tribunal de instancia, pues entendió que la prueba desfilada en el juicio no estableció la culpabilidad del acusado más allá de duda razonable, ya que el Ministerio Público no presentó prueba para establecer que "efectivamente se propinó un golpe violento, con vigor, intensidad, robustez o capaz de intentar o causar un daño a la Sra. Tavárez. Tampoco se estableció la relación causal entre el empleo de fuerza física y la intención de causarle daño a la Sra. Tavárez."[1]

Denegada la reconsideración el Ministerio Público recurrió ante nos mediante recurso de certiorari, alegando como único error el siguiente:

> Cometió error de derecho el Tribunal de Circuito de Apelaciones al interpretar el Artículo 3.1 de la Ley 54, toda vez que en su análisis añade elementos que no son constitutivos del delito tipificado en dicho artículo y que no fueron contemplados por el legislador, dando así al traste con la intención legislativa del estatuto en cuestión.

---

[1] Véase Anejo I, pág. 16 de la petición de certiorari.

Acordamos revisar y expedimos el recurso solicitado. Ambas partes han presentado sus alegatos y con el beneficio de sus argumentos procedemos a resolver.

II

El Art. 3.1 de la Ley 54 dispone que:

**Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o la persona de otro para causarle grave daño emocional, será sancionada con pena de reclusión por un término fijo de doce (12) meses, excepto que de mediar circunstancias atenuantes se podrá reducir a un término no menor de nueve (9) meses y de mediar circunstancias agravantes podrá aumentarse hasta dieciocho (18) meses. 8 L.P.R.A. § 631.**

Al analizar la disposición citada, encontramos que los elementos del delito de maltrato son: (1) **empleo de fuerza física** o violencia psicológica, intimidación o persecución; (2) contra una persona que haya sido cónyuge del agresor o agresora, o con quien haya convivido, sostenido una relación consensual, o procreado hijos; y (3) que la fuerza o violencia se haya efectuado **para causar daño físico** a esa persona o sus bienes.

En Pueblo v. Figueroa Santana, res. el 23 de julio de 2001, 154 D.P.R. ___ (2002), 2001 TSPR 112, 2001 J.T.S 115, tuvimos la oportunidad de interpretar si, para que se configurase el delito de Maltrato mediante fuerza física estatuido en el citado Art. 3.1, era necesario

establecer que la persona agresora había incurrido en un patrón de conducta constante de maltrato. Resolvimos esta cuestión en la negativa. Basta pues, con una sola agresión mediante el uso de fuerza física para que se configure el delito de maltrato que dispone la Ley 54. Nos corresponde ahora determinar si era necesario probar que se usó un grado de fuerza física en particular para que una persona pueda ser convicta del delito de maltrato tipificado en el Art. 3.1.

Al analizar la Ley 54, nos percatamos de que la misma no contiene una definición de lo que constituye "fuerza física" a los efectos del Art. 3.1. Tampoco ofrece gradación alguna de fuerza física necesaria para que se configure este delito. La razón para esto es fundamentalmente lógica y muy sencilla: el delito, según tipificado, sólo requiere que se haya utilizado fuerza física con la intención de causar daño. Cualquier tipo de fuerza o violencia física, moderada o severa, es suficiente para que se tipifique este delito. La gravedad o severidad de la fuerza física utilizada puede ser un factor a considerarse a los efectos de establecer la clasificación del delito como Maltrato o Maltrato Agravado, pero no es un elemento para determinar si el delito como tal fue cometido o no.

A la luz de lo expuesto, corresponde analizar la prueba presentada ante el tribunal de instancia para determinar si la misma estableció los elementos del delito de maltrato tipificado en el Art. 3.1.

La prueba desfilada ante el jurado consistió en los testimonios de la Sra. Tavárez; la hija de ésta y el Sr. Roldán, Lizmariel Roldán Tavárez; el agente que investigó el caso, Héctor Morales Pérez; y el Dr. Arturo Silvagnoli Collazo, quien examinó a la Sra. Tavárez el día después de los hechos.

La Sra. Tavárez testificó que se encontraba separada de su esposo desde el 29 de abril de 1998. El día de los hechos, 14 de octubre de 1998, ésta se encontraba en su casa cuando escuchó un golpe en la ventana, y su hija Lizmariel le dijo que allí estaba el Sr. Roldán. Continuó relatando que se acercó a la ventana y la abrió un poco, pero le indicó al Sr. Roldán que no le dejaría entrar a la casa. Entonces éste la escupió y ella cerró la ventana y fue a lavarse la cara.

La testigo declaró que luego se dirigió a la cocina, y desde allí escuchó el ruido de una goma vaciándose. Salió afuera para verificar qué pasaba y vio al Sr. Roldán agachado entre la esquina de la guagua y la pared. Ella le preguntó "¿Qué tu estás haciendo?". Acto seguido, el Sr. Roldán le tiró un puño. La Sra. Tavárez testificó que cuando ella vio que el Sr. Roldán le iba a dar, se viró, y el puño recayó en su espalda. Continuó declarando que antes de que ella pudiese huir, el Sr. Roldán le propinó dos (2) puños más en la espalda, un poco más abajo de donde fue el primero. La Sra. Tavárez salió corriendo y le dijo a su hija Lizmariel que llamara a la policía, mientras el

Sr. Roldán le gritó "si no me buscas cinco mil ($5,000) dólares, te voy a matar."[2]

Por su parte, Lizmariel, de quince (15) años de edad, declaró que era hija de la Sra. Tavárez y el Sr. Roldán. El día de los hechos, vio a su papá a través de la ventana y fue a avisarle a su mamá. Luego, se dirigió a la cocina a prepararse almuerzo, y cuando regresó a la sala vio a su mamá con la cara escupida. Poco después, escuchó el ruido de la goma vaciándose y vio a su mamá salir de la casa a preguntarle al Sr. Roldán que era lo que éste hacía. En ese momento, se dirigió a su cuarto y no salió de allí. Luego escuchó que su mamá le pidió que llamara a la policía, y enseguida llamó al 911. Vio entonces a su mamá, quien ya estaba dentro de la casa llorando. Testificó que le vio la piel enrojecida en la parte de la espalda al ésta levantarse la camisa.

El tercer testigo lo fue el agente de la policía que investigó el caso, Héctor Morales Pérez. Éste testificó que el día de los hechos atendió una querella de Ley 54, se personó en la casa de la Sra. Tavárez, donde ésta le narró lo sucedido. Testificó que antes de salir del cuartel a investigar la querella de Ley 54, un señor había ido a querellarse contra su esposa por un asunto relacionado a un cheque.[3] Cuando la Sra. Távarez le narró lo sucedido, se dio cuenta de que la persona que había visto en el cuartel era el Sr. Roldán. Entonces regresó al

_____

[2] Aparentemente, el Sr. Roldán se refería a un cheque por esa cantidad pagado a favor de ambos, y que la Sra. Tavárez había endosado, firmando tanto por ella como por su esposo. Éstos tenían un negocio de imprenta que habían administrado conjuntamente por varios años.

cuartel y allí mismo puso bajo arresto al Sr. Roldán por ser sospechoso de violar la Ley 54. Luego de esto, el agente acompañó a la Sra. Tavárez a fiscalía para que se sometieran los cargos contra el recurrido.

El último testigo del Ministerio Público lo fue el Dr. Arturo Silvagnoli Collazo. Éste declaró que era Pediatra, y que en los últimos años había ejercido medicina de familia. Testificó que conocía a la Sra. Tavárez y que el 17 de octubre de 1998 la examinó. Basado en el informe médico que preparó el Dr. Silvagnoli ese día, el cual fue admitido en evidencia, éste declaró que la paciente presentaba en la fecha del examen un hematoma en el área del hombro derecho de tres (3) centímetros por cuatro (4) centímetros. Encontró, además, un hematoma en el área intraescapular (parte posterior del tórax, entre las escápulas) de cuatro (4) centímetros por dos (2) centímetros. La Sra. Tavárez se quejaba de dolor a la palpación en esas áreas, por lo que le recetó el analgésico "Daypro."

Con esta prueba, el jurado encontró al acusado culpable del delito de Maltrato tipificado en el Art. 3.1. En apelación, el Tribunal de Circuito revoca esta convicción por entender que la prueba fue insuficiente para configurar todos los elementos del delito de maltrato.

De los testimonios vertidos en la vista del caso, se desprende claramente que el Ministerio Público ofreció prueba de todos los elementos del delito imputado. Se

---

[3] Véase escolio 2.

estableció que entre la víctima y el agresor existía un vínculo matrimonial, y que éste la golpeó con tres (3) puños en la espalda. El testimonio médico confirmó que la Sra. Tavárez efectivamente recibió dichos golpes, y al jurado le mereció entera credibilidad el testimonio de la víctima sobre cómo ocurrieron los hechos.

El Tribunal de Circuito entendió que en estos casos es necesario presentar prueba sobre cuán intenso fue el golpe o la agresión para determinar si es capaz de causar daño. Este enfoque es totalmente erróneo y contrario a la política pública esbozada en la Ley 54. Como ya indicáramos, el grado o intensidad de la agresión puede ser un factor a considerar para determinar la gravedad del delito o para decidir si a la persona agresora debe concedérsele el beneficio, por ejemplo de un programa de desvío, pero bajo ningún supuesto de hecho o derecho la intensidad de la agresión es un factor determinante para decidir si se cometió o no el delito de maltrato. Si existe una agresión dirigida a causar daño, el delito queda configurado.

Por otra parte, se desprende claramente de los testimonios vertidos en la vista del caso la intención del Sr. Roldán de causar daño a la Sra. Tavárez. ¿Por qué otra razón iba a propinarle tres (3) puños en la espalda? Además, la defensa tampoco ofreció razón alguna para aducir otra intención en la actuación del Sr. Roldán que no fuese la de causarle daño a la víctima. La actitud agresiva del Sr. Roldán al amenazar con matar a la Sra.

Tavárez si no le buscaba los cinco mil ($5,000) dólares claramente avalan esta determinación.

Por otra parte, el juzgador de los hechos, el jurado, dirimió credibilidad y, en ausencia de una demostración de que hubo pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba hecha en instancia. Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454 (1988), Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986), Pueblo v. Borrero Robles, 113 D.P.R. 387 (1982). Resulta evidente que el jurado determinó que todos los elementos del delito, inclusive la intención de causar daño, quedaron establecidos. Erró el foro apelativo al sustituir su criterio por el del juzgador de los hechos.

IV

Por todos estos fundamentos, se revoca la sentencia del Tribunal de Circuito de Apelaciones. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

                                  CC-2000-547

       v.

Benigno Roldán López

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 12 de septiembre de 2002

Por los fundamentos expuestos en la Per Curiam que antecede, se revoca la sentencia del Tribunal de Circuito de Apelaciones. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo