SENTENCIA
La Procuradora General comparece ante este Foro y so-licita que revisemos una sentencia emitida por el Tribunal de Apelaciones. Mediante ese dictamen, se revocó el fallo condenatorio emitido por el Tribunal de Primera Instancia en el que el Sr. Eligió Pérez Feliciano fue encontrado culpable por el delito tipificado en el Art. 3.1 de la Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. sec. 631), conocida como la Ley para la Prevención e Intervención con la Vio-lencia Doméstica (Ley Núm. 54). El foro apelativo ordenó la desestimación de la acusación por entender que el pliego *1004 acusatorio era insuficiente, ya que no imputaba delito alguno. En esta ocasión nos corresponde resolver si el pliego acusatorio presentado contra el señor Pérez Feli-ciano era defectuoso y si afectó sus derechos sustanciales, evitando así que este tuviera una defensa adecuada. Por entender que el pliego acusatorio cumple con criterios de suficiencia a la luz de nuestro ordenamiento legal, revoca-mos al tribunal a quo.
Examinemos los antecedentes fácticos que dieron géne-sis al presente caso.
I — I
El Ministerio Público presentó una denuncia contra el señor Pérez Feliciano por hechos acaecidos el 22 de abril de 2009. En esta, se le imputó haber empleado violencia física contra la Sra. Mirelsa Rosado Santiago. Se alegó, además, que el señor Pérez Feliciano le profirió palabras soeces y le escupió la cara a la dama. Celebrada la vista para la de-terminación de causa probable para el arresto, el tribunal impuso una fianza de quince mil dólares. Subsiguiente-mente, el 6 de mayo de 2009 se llevó a cabo la vista preli-minar en la que se determinó causa probable para acusar y se pautó el juicio para el 23 de junio de 2009. Ese mismo día, el señor Pérez Feliciano fue citado para el acto de lec-tura de acusación, el 26 de mayo de 2009.
La acusación presentada contra el señor Pérez Feliciano por infracción al Art. 3.1 de la Ley Núm. 54, supra, expre-saba lo siguiente:
El referido acusado de epígrafe, allá para el día 21 de abril de 2009, en Manatí, Puerto Rico, que forma parte de la jurisdic-ción del Tribunal de Primera Instancia de Puerto Rico, Sala de Arecibo; ilegal, voluntaria, maliciosa y con la intención criminal[,] empleó violencia física contra la Sra. Mirelsa Ro-sado Santiago, con quien ha sostenido relaciones sexuales ín-timas, consistente en que le tiró una lata de cerveza en el *1005 rostro causándole una laceración, le habló palabras soeces y la escupió en la cara varias veces. (Énfasis suprimido.(1)
Durante el juicio en su fondo, una vez concluida la pre-sentación de la prueba de cargo, la defensa adujo que la acusación no imputaba delito alguno.(2) Sin embargo, este planteamiento no fue acogido por el foro primario y, en con-secuencia, declaró culpable al señor Pérez Feliciano por el delito de maltrato, según surge de la acusación. Así las co-sas, el 5 de octubre de 2009, el señor Pérez Feliciano fue sentenciado a cumplir dieciocho meses en el Programa de Desvío que establece el Art. 3.6 de la Ley Núm. 54 (8 L.P.R.A. sec. 636).
Insatisfecho con esta determinación, el 22 de octubre de 2009, el recurrido presentó un escrito de apelación ante el Tribunal de Apelaciones. Atendido el recurso apelativo, el 21 de mayo de 2010, el foro apelativo intermedio emitió una sentencia en la que revocó el fallo condenatorio dictado que declaraba culpable al recurrido por infracción al Art. 3.1 de la Ley Núm. 54, supra. En virtud de ello, se ordenó la desestimación de la acusación por tratarse de un pliego acusatorio insuficiente, donde no se imputaba delito alguno. Según el tribunal recurrido, la acusación formu-lada contra el señor Pérez Feliciano era insuficiente, por-que carecía de un elemento esencial del delito que se pre-tendía imputar, a saber, que se trataba de una relación consensual íntima. A tales efectos, resaltó que la acusación en pugna se limitó a alegar que las partes habían sostenido relaciones sexuales íntimas sin aducir que sostuvieron una relación afectiva consensual. El foro apelativo intermedio estableció que resolver lo contrario equivaldría a expandir la aplicación de la Ley Núm. 54, supra, a situaciones no establecidas en esta, como lo es el caso de personas que meramente sostienen o han sostenido relaciones sexuales. *1006 Finalmente, puntualizó que el Ministerio Público tuvo oportunidad de enmendar la acusación previo a que reca-yera el fallo y no lo hizo.(3)
Inconforme con el curso decisorio del foro apelativo in-termedio, el 10 de junio de 2010 la Procuradora General solicitó una reconsideración, pero fue denegada. Esto úl-timo se notificó el 29 de julio de 2010.
Así las cosas, el 1 de septiembre de 2010, el Estado pre-sentó ante nos un recurso de certiorari para la revisión de la determinación emitida por el tribunal a quo, señalando que:
Erró el Honorable Tribunal de Apelaciones al determinar que el pliego acusatorio era insuficiente porque no imputaba delito, toda vez que la acusación formulada contra el apelante carecía de un elemento esencial del delito que pretendía im-putar, esto es que se trataba de una relación consensual ín-tima cuando la acusación en el presente caso se limitó a alegar que las partes habían sostenido relaciones sexuales íntimas. Petición de certiorari, pág. 5.
El 18 de febrero de 2011 declaramos “no ha lugar” el recurso de autos por falta de jurisdicción. Oportunamente, el 1 de marzo de 2011, la Procuradora General presentó una moción de reconsideración y argüyó que, ante la ame-naza del huracán Earl, la Rama Judicial decretó la suspen-sión de trabajos el 30 de agosto de 2010. A consecuencia de ello, los términos jurisdiccionales fueron extendidos y el recurso de certiorari debía ser considerado, ya que se pre-sentó en los términos requeridos. Examinada esta moción, decidimos declarar “con lugar” el referido petitorio el 6 de julio de 2011. Asimismo, le ordenamos al recurrido que mostrara causa por la cual no debíamos expedir el recurso y revocar la sentencia dictada por el Tribunal de Apelaciones. Contando con el beneficio de la comparecen- *1007 cia de ambas partes, debemos remitirnos al marco jurídico aplicable a la controversia que nos ocupa.
II
A. La violencia se ha convertido en un mal que lamen-tablemente afecta todos los sectores sociales de nuestro país. Sin duda, la falta de reconocimiento de la dignidad del ser humano nos ha conducido por un camino oscuro y confuso donde el valor de la persona se ha supeditado a otros intereses de inferior categoría. Particularmente, en el contexto de las relaciones de pareja, la pérdida de respeto hacia la persona ha resultado en la comisión de crímenes desgarradores que día a día perturban la sana convivencia familiar y social de nuestro pueblo.
Como bien expresa la Exposición de Motivos de la Ley Núm. 54, “[l]a violencia doméstica es un comportamiento antisocial que constituye un serio problema para la familia puertorriqueña. ... Tolerar la violencia doméstica hoy, con-tribuye a la desintegración de la familia, a fomentar la criminalidad y al debilitamiento de los valores de la convi-vencia humana.”(4)
Específicamente, el Art. 1.3(p) de la Ley Núm. 54 define violencia doméstica como sigue:
[U]n patrón de conducta constante de empleo de fuerza fí-sica o violencia psicológica, intimidación o persecución contra una persona por parte de su cónyuge, ex cónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, para causarle daño físico a su persona, sus bienes o a la persona de otro o para causarle grave daño emocional. 8 L.P.R.A. sec. 602(p).
Debido a que la víctima se encuentra ligada íntima y emocionalmente a su agresor y está igualmente sujeta a *1008 episodios cíclicos de violencia física, emocional y psicoló-gica, la violencia en la relación de pareja posee caracterís-ticas distintivas de otros tipos de violencia.(5) Ante esta realidad, debemos reafirmar de manera contundente la po-lítica contra la violencia doméstica. De este modo asegura-mos que los instrumentos sustantivos y procesales provis-tos por la Ley Núm. 54, supra, se apliquen de manera rigurosa y eficaz.
La política pública contra la violencia doméstica repu-dia enérgicamente esta conducta por ser contraria a los valores de paz, dignidad y respeto que este pueblo desea mantener para las personas, las familias y la comunidad en general. Ley Núm. 54, supra. Conforme a estos propó-sitos, este Tribunal ha apuntalado en varias ocasiones que la violencia doméstica “ ‘es un mal endémico y una infamia repudiable que aqueja a la sociedad contemporánea. Si algo ha de quedar claro es la política pública en su contra, consagrada en la Ley para la Prevención en Intervención con la Violencia Doméstica’ ”. Pueblo v. Figueroa Santana, 154 D.P.R. 717, 723 (2001), citando a San Vicente v. Policía de P.R., 142 D.P.R. 1, 2(1996).
A estos efectos, las manifestaciones de violencia se en-cuentran tipificadas como delitos en la Ley Núm. 54, supra. El Art. 3.1 del citado estatuto tipifica el delito de “maltrato”, el cual sanciona la utilización de fuerza física, de violencia psicológica, de intimidación o de persecución contra la persona con la que se sostiene o se ha sostenido una relación de pareja para causarle daño físico o emocio-nal, o daño a sus bienes. Este precepto define maltrato de la manera siguiente:
Toda persona que empleare fuerza física o violencia psicoló-gica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una rela- *1009 ción consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privati-vamente al ofensor, o a la persona de otro o para causarle grave daño emocional .... 8 L.P.R.A. sec. 631.
Al interpretar la referida disposición legislativa, en Pueblo v. Roldán López, 158 D.P.R. 54, 57 (2002), este Tribunal determinó que los elementos del delito de maltrato son los siguientes: (1) el empleo de fuerza física o de la violencia psicológica, la intimidación o persecución; (2) contra una persona que haya sido cónyuge del agresor o agresora, o con quien haya convivido, sostenido una relación consensual, o procreado hijos, y (3) que la fuerza o violencia se haya efectuado para causar un daño físico a esa persona o a sus bienes.
En el intento de combatir esta conducta tan nociva a la dignidad humana, debemos esforzarnos por lograr que esta no pase desapercibida y porque la víctima tome las medi-das necesarias para evitar tragedias mayores. Pueblo v. Figueroa Santana, supra. Así, al interpretar las disposicio-nes de la Ley Núm. 54, supra, debemos tener presente los principios y propósitos sociales que promovieron su apro-bación sin desligarnos de la realidad y del problema hu-mano que la norma persigue atender. Pueblo v. Figueroa Santana, supra. Véanse, también: Pueblo v. Zayas Rodríguez, 147 D.P.R. 530 (1999); Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735 (1992).
Cónsono con lo anterior, reiteramos que el propósito de la Ley Núm. 54, supra, es un corolario del interés apre-miante del Estado de disuadir a sus miembros de incurrir en actos violentos y de modificar los patrones de conducta tan lesivos a la persona que están arraigados en nuestro pueblo. Pueblo v. Rodríguez Velázquez, 152 D.P.R. 192 (2000); Pueblo v. Rivera Morales, 133 D.P.R. 444 (1993). Restarle importancia a este tipo de crímenes agravaría un ya ingente problema social. Pueblo v. Rodríguez Velázquez, supra; Pueblo v. Esmurria Rosario, 117 D.P.R. 884 (1986).
*1010 B. La Quinta Enmienda de la Constitución de Estados Unidos(6) reconoce que ninguna persona “será privada de su libertad o de su propiedad, sin el debido procedimiento de ley”. De igual manera, nuestra Constitución establece este derecho en la Sec. 7 del Art. II.(7) Así, en virtud del debido proceso de ley, tanto la Enmienda Sexta(8) de la Constitución federal como la Sec. 11 del Art. II de nuestra Carta Magna(9) consagran el derecho de todo acusado a ser notificado de la causa de acción en su contra. No obstante, en nuestra jurisdicción, este derecho se complementa con la obligación del Estado de entregar al acusado una copia del pliego acusatorio.(10)
En lo pertinente a este principio, el Estado cumple con el deber de informar adecuadamente al acusado a través de la acusación, la cual luego servirá de base a las alega-ciones y los procedimientos posteriores, incluyendo el juicio. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, Vol. III, págs. 140-141. A estos efectos, la Regla 35 de Pro-cedimiento Criminal, 34 L.P.R.A. Ap. II, provee los datos que deberá tener una acusación conforme a los estándares de una notificación adecuada. En particular, el inciso (c) de la regla exige que la acusación deberá contener lo si-guiente:
Una exposición de los hechos esenciales constitutivos del de-lito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. Las palabras usadas en dicha exposición se interpre-tarán en su acepción usual en el lenguaje corriente, con excep-ción de aquellas palabras y frases definidas por ley o por la jurisprudencia, las cuales se interpretarán en su significado legal. Dicha exposición no tendrá que emplear estrictamente *1011 las palabras usadas en la ley, y podrá emplear otras que tu-vieren el mismo significado. Regla 35 de Procedimiento Criminal, supra.
Conforme a la doctrina establecida, al analizar si se sa-tisface el mandato constitucional de la debida notificación, lo esencial es que el contenido de la acusación exponga todos los hechos constitutivos del tipo delictivo, de forma que cualquier acusado de inteligencia mediana pueda, en efecto, entender de qué se le acusa. Pueblo v. Montero Luciano, 169 D.P.R. 360 (2006); Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 694 (1981). Para cumplir con este requisito constitucional, la precitada regla no exige que la acusación siga fielmente las palabras de la ley, tampoco es necesario que el Estado emplee un lenguaje “talismánico o estereoti-pado”, pues su propósito no es “cumplir mecánicamente con un ritual”, sino informar al acusado sobre el delito que se le imputa. Pueblo v. Calviño Cereijo, supra; Pueblo v. Meléndez Cartagena, 106 D.P.R. 338, 341 (1977). Se colige entonces que si en la acusación algún elemento esencial fue imputado sin emplear las mismas palabras que utilizó el legislador, esto no provocará su insuficiencia si el acu-sado puede comprender de qué se le está acusando y no se afecta su defensa.
Sin embargo, cuando las alegaciones contenidas en el pliego acusatorio no imputan delito alguno bajo las leyes penales de Puerto Rico, procede la desestimación por insu-ficiencia del pliego acusatorio. Regla 64(a) de Procedi-miento Criminal, 34 L.P.R.A. Ap. II; Chiesa Aponte, op. cit. De esta forma, una moción de desestimación fundamen-tada en que la acusación no imputa delito, se convierte en un mecanismo procesal para objetar la suficiencia de los cargos presentados en el pliego acusatorio. O.E. Resumil de Sanfilippo, Práctica jurídica de Puerto Rico: derecho procesal penal, New Hampshire, Ed. Butterworth, 1993, Vol. 2, pág. 10. Esta moción puede ser presentada en cual-quier etapa del procedimiento criminal, toda vez que posee *1012 un carácter privilegiado. Regla 63 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
Por su parte, la Regla 36 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece lo relacionado a los defectos de forma y dispone que “una acusación o denuncia no será insuficiente ... por causa de algún defecto, imperfección u omisión de forma que no perjudique] los derechos sustan-ciales del acusado”. Por lo tanto, “si el defecto no ocasiona que el pliego acusatorio sea insuficiente ni que el imputado sufra un perjuicio sustancial en cuanto a su oportunidad de defenderse, entonces se trata de un defecto de forma y por ende el pliego acusatorio puede ser enmendado en cual-quier momento”. (Enfasis nuestro.) Chiesa Aponte, op. cit. pág. 173. Tanto es así, que dado el caso en que no se solicite la enmienda, el pliego que adolece de algún defecto de forma se entenderá subsanado una vez rendido el veredicto del Jurado o el fallo del tribunal. Regla 38(a) de Procedi-miento Criminal, 34 L.P.R.A. Ap. II.
A diferencia de los defectos o las omisiones de forma, un defecto sustancial es aquel que afecta los derechos sustan-ciales del acusado, bien porque le impide preparase ade-cuadamente para su defensa o porque sencillamente, tiene el efecto de insuficiencia del pliego acusatorio. Pueblo v. Meléndez Cartagena, supra; Chiesa Aponte, op. cit., pág. 174. En esta determinación, son materia sustancial todos los hechos que necesariamente deben ser probados para hacer del acto un delito. Pueblo v. González, 97 D.P.R. 541 (1969). Es decir, la acusación debe incluir todos los elemen-tos del delito, de lo contrario será insuficiente y sufrirá de un defecto sustancial. Pueblo v. Díaz Breijo, 97 D.P.R. 64 (1969). No obstante, el tribunal puede permitir enmiendas para añadir hasta un elemento esencial del delito impu-tado antes de la convicción o la absolución del acusado. Rabell Martínez v. Tribunal Superior, 102 D.P.R. 39 (1974); Resumil de Sanfilippo, op. cit., pág. 155. De ser este el caso, el acusado tendrá derecho a que se le celebre nueva- *1013 mente el acto de lectura de la acusación. Regla 38(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
A estos efectos, es imperativo reiterar que, en la consi-deración de si el pliego acusatorio aduce de manera satis-factoria los hechos constitutivos de delito, “no se exigirá que se alegue con perfección de artífice” todos los elemen-tos de la conducta punible. Pueblo v. Rodríguez López, 96 D.P.R. 690 (1968). Véase, también, Resumil de Sanfilippo, op. cit., pág. 10. Es preciso señalar que, en conformidad con las normas de interpretación que aseguran un procedi-miento justo, sin dilaciones y sin gastos injustificados, a la luz de la Regla 35 de Procedimiento Criminal, supra, este Tribunal ha avalado una interpretación liberal al analizar la suficiencia del pliego acusatorio. Reglas 1 y 35 de Proce-dimiento Criminal, 34 L.P.R.A. Ap. II; Pueblo v. Felicier Villalongo, 105 D.P.R. 600 (1977).
III
En el caso de autos, el Ministerio Público señala que el Tribunal de Apelaciones incidió al revocar el dictamen de culpabilidad del foro primario contra el Sr. Eligió Pérez Feliciano. Específicamente, aduce que erró al determinar que el pliego acusatorio era insuficiente, toda vez que ca-recía de un elemento esencial del delito de maltrato, según tipificado en el referido Art. 3.1 de la Ley Núm. 54, supra, al limitarse a alegar que las partes habían sostenido rela-ciones sexuales íntimas, en vez de imputar que se trataba de una relación consensual íntima.
Según se desprende de la exposición del derecho, el pro-pósito esencial del pliego acusatorio, en conformidad con el debido proceso de ley, es notificar adecuadamente al acu-sado del delito por el cual va a ser procesado. En el caso de marras, el pliego acusatorio contra el señor Pérez Feliciano alegaba que este empleó violencia física contra la Sra. Mi-relsa Rosado Santiago, persona con quien ha sostenido re- *1014 ¡aciones sexuales íntimas. Los actos de violencia, según imputados, consistían en que el convicto le tiró una lata de cerveza en el rostro causándole una laceración, le habló palabras soeces y le escupió la cara varias veces a la dama.
De los hechos consignados en la acusación obtenemos las alegaciones de que el recurrido empleó la fuerza física y violencia psicológica contra la señora Rosado. En particular, en la acusación no se específica el lenguaje exacto uti-lizado, según establecido en la Ley Núm. 54, supra, que la señora hubiera sido cónyuge del recurrido, que hubiese procreado hijos con el agresor o que hubiese sostenido una relación consensual íntima con este.
La controversia del caso ante nos se basa en que el Mi-nisterio Público, al establecer este elemento del delito de maltrato, utilizó las palabras “relación sexual íntima”. Si bien es cierto que el pliego acusatorio no siguió fielmente las palabras de la ley, leída e interpretada racional y razo-nablemente a la luz de la norma de hermenéutica estable-cida en la Regla 35(c) de Procedimiento Criminal, supra, colegimos que en las circunstancias de este caso específico, se exponen los elementos esenciales del delito del maltrato de la Ley Núm. 54.
Estamos llamados a interpretar las leyes según su espí-ritu y en armonía con el propósito social que estas aspiran cumplir. Pueblo v. Figueroa Santana, supra. No cabe la menor duda que el propósito de las alegaciones del pliego que hacen referencia a que entre el recurrido y la señora Rosado hubo “relaciones sexuales íntimas”, fue expresar que entre ellos existía una “relación consensual íntima” conforme a las definiciones provistas por el legislador en la Ley Núm. 54, supra. Una persona de inteligencia prome-dio, a la luz de las alegaciones provistas en el pliego acu-satorio contra el señor Pérez Feliciano, podría entender ca-balmente y sin mayor dificultad que se trataba de una acu-sación por el delito de maltrato. Entendemos que el requi-sito constitucional de la adecuada notificación al acu- *1015 sado fue debidamente satisfecho y no había una confusión sobre si en las circunstancias particulares del caso existía, en efecto, una relación consensual. En la interpretación en cuanto al lenguaje utilizado en la imputación de delito, de-bemos concluir que en este caso se consignaron los elemen-tos del delito, de forma que fueron suficientes para notifi-car al señor Pérez Feliciano de la naturaleza y de la causa de acción en su contra. Como consecuencia de ello, el recu-rrido disfrutó sin menoscabo alguno su derecho a un debido proceso de ley.
Más aún, según se desprende de la transcripción de la prueba oral estipulada surgida del juicio celebrado el 9 de noviembre de 2009, se estableció que la pareja mantuvo un noviazgo. En lo pertinente, en el examen directo a la víc-tima, la transcripción expresa lo siguiente:
FISCAL: Le pregunto, ¿si usted conoce a Eligió Pérez Feli-ciano?
TESTIGO: Sí, lo conozco.
Fiscal: ¿Por razón de qué o qué tipo de relación había entre ustedes?
TESTIGO: Como novios o casi novios.
FISCAL: ¿Convivían?
GONZÁLEZ: Objeción a la sugestividad, Juez.
FISCAL: Ah!
TESTIGO: No, yo me quedaba a veces en la casa de él.
FISCAL: ¿Cuántas veces?
TESTIGO: Casi todas las semanas, a veces cuatro días, de-pende porque yo trabajo.
FISCAL: ¿Y él en la suya cuántas veces se quedaba?
GONZÁLEZ: Objeción. Es sugestivo, Juez.
JUEZ. Bendito sea Dios! ¿Convivían, se acostaban?
TESTIGO: Sí.
JUEZ: Pues ya.
FISCAL: Le pregunto, ¿hace cuánto tiempo usted lo conoce a él?
TESTIGO: Hace tre ... más o ... bueno hace tres años ahora vamos a cumplir cuatro.(11)
El Tribunal de Primera Instancia le rindió total credibi- *1016 lidad a la prueba desfilada durante el juicio contra el señor Pérez Feliciano. Al así hacerlo, encontró culpable al recu-rrido más allá de toda duda por su infracción al delito de maltrato según tipificado en el Artículo 3.1 de la Ley Núm. 54, supra. En la función revisora de los dictámenes de los foros de instancia, es pertinente apuntalar la norma de Pueblo v. Colón, Castillo, 140 D.P.R. 564, 581-582 (1996), donde expresamos:
Como primer paso a una determinación de suficiencia [de prueba], el tribunal ha de cerciorarse que el Ministerio Público haya aducido ... todos los elementos del delito imputado. ...
También se exige que la evidencia conecte al acusado con los delitos imputados, una función eminentemente propia del juz-gador de la credibilidad. Dentro de la responsabilidad del tribunal de examinar la suficiencia, éste ha de asegurarse de que la prueba de cargo sea una que, de ser creída, pueda conectar al acusado con el delito imputado. (Énfasis suprimido.)
Antes de dictar el fallo de culpabilidad, el foro de ins-tancia interpretó la Regla 35(c) de Procedimiento Criminal, supra, y no encontró ningún defecto sustancial en el pliego acusatorio. Ello porque se comprendía que el tér-mino “relación sexual íntima”, en el contexto del caso de autos y en conjunto con el resto de las alegaciones del pliego acusatorio, se refería a “relación consensual íntima”. La actuación del Ministerio Público de no haber expresado a “perfección de artífice” que se trataba de una “relación consensual íntima” y no meramente una “relación sexual íntima” no invalida la acusación. Véase Pueblo v. Rodríguez López, supra. No observamos un ápice de que el señor Pérez Feliciano se vio afectado o impedido de comprender de qué se le acusaba. De ninguna manera podemos avalar la invitación que nos hace el convicto para declarar que la acusación sufre de un defecto sustancial.
Además, conviene distinguir los hechos de este caso de aquellos que atendimos en Pueblo v. Flores Flores, 181 D.P.R. 225 (2011). Allí, por estar divididos, emitimos una *1017 Sentencia mediante la cual confirmamos el dictamen del Tribunal de Apelaciones. En aquel entonces, el Juez Aso-ciado Señor Kolthoff Caraballo emitió una opinión de con-formidad a la que se unieron los Jueces Asociados Señor Martínez Torres y Señora Pabón Charneco. En ella, se ex-puso en esencia que la Ley Núm. 54, supra, no aplica a relaciones adúlteras, por lo que procedía desestimar la acusación contra el acusado. Sin embargo, se indicó expre-samente que “en el caso de la relación consensual esta puede entenderse por la de los novios que sin convivir pue-den llegar a mantener una relación afectiva”. Pueblo v. Flores Flores, supra, pág. 244. Precisamente, eso es lo que ocurre en el caso que nos ocupa.
A la luz del análisis de los hechos y del estado de dere-cho esbozados, concluimos que no estamos ante un pro-blema de suficiencia del pliego acusatorio por causa de un error sustancial. Los actos expuestos en la acusación fue-ron suficientes a los efectos de indicar de manera inteligi-ble los elementos de la conducta prohibida por el Art. 3.1 de la Ley Núm. 54, supra. Debemos destacar que esos ele-mentos fueron probados y que el recurrido fue hallado culpable más allá de toda duda razonable por el foro primario, luego de evaluar la totalidad de la prueba presentada en el juicio. Por ello, es forzoso colegir que el Tribunal de Apela-ciones cometió el error señalado.
> I — 1
Por los fundamentos expuestos, se expide el auto de “cer-tiorari” solicitado y se revoca la sentencia dictada por el Tribunal de Apelaciones. En consecuencia, se reinstala el fallo condenatorio emitido por el Tribunal de Primera Ins-tancia contra el señor Pérez Feliciano por infracción al Art. 3.1 de la Ley Núm. 54.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Señora Fiol Matta emi- *1018 tió una opinión concurrente, a la cual se unió el Juez Pre-sidente Señor Hernández Denton. La Juez Asociada Se-ñora Rodríguez Rodríguez emitió una opinión concurrente y disidente. El Juez Asociado Señor Martínez Torres emitió una opinión de conformidad, a la cual se unió el Juez Aso-ciado Señor Kolthoff Caraballo y la Jueza Asociada Señora Pabón Charneco. El Juez Asociado Señor Rivera García emitió una opinión de conformidad, a la cual se unió el Juez Asociado Señor Feliberti Cintrón.
(Fdo.) Leda. Larissa Ortiz Modestti

Secretaria Tribunal Supremo Interina

 Petición de certiorari, pág. 4.

 Apéndice de la Petición de certiorari, pág. 32.

 La sentencia del Tribunal de Apelaciones fue notificada el 26 de mayo de 2010. Véase Apéndice de la Petición de certiorari, pág. 1.

 1989 Leyes de Puerto Rico 222.

 Véase el Memorial Explicativo sobre el P. de la C. 615 y P. del S. 470.

 Const. EE. UU., L.P.R.A., Tomo 1, ed. 2008, pág. 189.

 Const. E.L.A., L.P.R.A., Tomo 1.

 Const. EE. UU., supra.

 Const. E.L.A., supra.

 íd.

 Véase el Apéndice de la Petición de certiorari, págs. 24 — 25.