EL PUEBLO DE PUERTO RICO, peticionario, *v.* BENIGNO ROLDÁN LÓPEZ, recurrido.

*Número:* CC-2000-547          *Resuelto:* 12 de septiembre de 2002

*Wanda T. Castro Alemán*, abogada de la parte peticionaria; *Gustavo A. Gelpí, procurador general, Rosa N. Russé García, subprocuradora general, y Yasmín Chaves Dávila, procuradora general auxiliar*, abogados de El Pueblo.

PER CURIAM:

## I

Por hechos ocurridos el 14 de octubre de 1999, el Sr. Benigno Roldán López fue acusado de infracciones a los Arts. 3.1 (maltrato) y 3.3 (maltrato mediante amenaza) de la Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. secs. 631 y 633), contra su esposa, la Sra. Ada Tavárez Echevarría. La conducta maltrante consistió en varios puños que el señor Roldán le propinó en el área de la espalda a la señora Tavárez.

Se celebró el juicio por jurado, que rindió veredicto de culpabilidad en cuanto al Art. 3.1 de la Ley Núm. 54, *su-*

*pra*, y de no culpable por violación al citado Art. 3.3. Posteriormente, el tribunal de instancia dictó su sentencia en la cual le concedió al convicto los beneficios del régimen de libertad bajo palabra, sujeto a que participara en un programa de educación y adiestramiento para personas que incurren en conducta maltratante (programa de agresores) por un término de treinta y seis meses. No obstante, el tribunal dispuso que si en el término de doce meses el señor Roldán cumplía satisfactoriamente con el programa de desvío, se daría por cumplida la sentencia.

El recurrido apeló esta determinación ante el Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito). Dicho foro revocó el dictamen del tribunal de instancia, pues entendió que la prueba desfilada en el juicio no estableció la culpabilidad del acusado más allá de duda razonable, ya que el Ministerio Público no presentó prueba para establecer que

> ... efectivamente se propinó un golpe violento, con vigor, intensidad, robustez o capaz de intentar o causar un daño a la Sra. Tavárez. Tampoco se estableció la relación causal entre el empleo de fuerza física y la intención de causarle daño a la Sra. Tavárez.[1]

Denegada la reconsideración, el Ministerio Público recurrió ante nos mediante un recurso de *certiorari*, alegando como único error el siguiente:

> Cometió error de derecho el Tribunal de Circuito de Apelaciones al interpretar el Artículo 3.1 de la Ley 54, toda vez que en su análisis añade elementos que no son constitutivos del delito tipificado en dicho artículo y que no fueron contemplados por el legislador, dando así al traste con la intención legislativa del estatuto en cuestión.

Acordamos revisar y expedimos el recurso solicitado. Ambas partes han presentado sus alegatos y con el beneficio de sus argumentos procedemos a resolver.

---

[1] Véase Anejo I de la petición de *certiorari*, pág. 16.

## II

El Art. 3.1 de la Ley Núm. 54, *supra*, dispone, en lo pertinente, que:

Toda persona que empleare fuerza física o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofensor, o la persona de otro para causarle grave daño emocional, será sancionada con pena de reclusión por un término fijo de doce (12) meses, excepto que de mediar circunstancias atenuantes se podrá reducir a un término no menor de nueve (9) meses y de mediar circunstancias agravantes podrá aumentarse hasta dieciocho (18) meses. 8 L.P.R.A. sec. 631.

Al analizar la disposición citada, encontramos que los elementos del delito de maltrato son: (1) *empleo de fuerza física* o violencia psicológica, intimidación o persecución; (2) empleo de fuerza contra una persona que haya sido cónyuge del agresor o agresora, o con quien haya convivido, sostenido una relación consensual, o procreado hijos, y (3) que la fuerza o violencia se haya efectuado *para causar daño físico* a esa persona o a sus bienes.

En *Pueblo v. Figueroa Santana*, 154 D.P.R. 717 (2002), tuvimos la oportunidad de interpretar si para que se configurase el delito de maltrato mediante fuerza física estatuido en el citado Art. 3.1 de la Ley Núm. 154, *supra*, era necesario establecer que la persona agresora había incurrido en un patrón de conducta constante de maltrato. Resolvimos esta cuestión en la negativa. Basta, pues, con una sola agresión mediante el uso de fuerza física para que se configure el delito de maltrato que dispone la Ley Núm. 54, *supra*, 8 L.P.R.A. sec. 601 *et seq*. Nos corresponde ahora determinar si era necesario probar que se usó un grado de fuerza física en particular para que una persona pueda ser

convicta del delito de maltrato tipificado en el Art. 3.1, *supra*.

■ Al analizar la Ley Núm. 54, *supra*, nos percatamos de que no contiene una definición de lo que constituye "fuerza física" a los efectos del referido Art. 3.1. Tampoco ofrece gradación alguna de fuerza física necesaria para que se configure este delito. La razón para esto es fundamentalmente lógica y muy sencilla: el delito, según tipificado, sólo requiere que se haya utilizado fuerza física con la intención de causar daño. Cualquier tipo de fuerza o violencia física, moderada o severa, es suficiente para que se tipifique este delito. La gravedad o severidad de la fuerza física utilizada puede ser un factor que ha de considerarse a los efectos de establecer la clasificación del delito como maltrato o maltrato agravado, pero no es un elemento para determinar si el delito como tal fue cometido o no.

A la luz de lo expuesto, corresponde analizar la prueba presentada ante el tribunal de instancia para determinar si ella estableció los elementos del delito de maltrato tipificado en el Art. 3.1.

## III

La prueba desfilada ante el Jurado consistió en los testimonios de la señora Tavárez; la hija de ésta y el señor Roldán, Lizmariel Roldán Tavárez; el agente que investigó el caso, Héctor Morales Pérez, y el Dr. Arturo Silvagnoli Collazo, quien examinó a la señora Tavárez el día después de los hechos.

La señora Tavárez testificó que se encontraba separada de su esposo desde el 29 de abril de 1998. El día de los hechos, 14 de octubre de 1998, ésta se encontraba en su casa cuando escuchó un golpe en la ventana, y su hija Lizmariel le dijo que allí estaba el señor Roldán. Continuó relatando que se acercó a la ventana y la abrió un poco, pero le indicó al señor Roldán que no le dejaría entrar a la

casa. Entonces éste la escupió y ella cerró la ventana y fue a lavarse la cara.

La testigo declaró que luego se dirigió a la cocina y desde allí escuchó el ruido de una goma vaciándose. Salió afuera para verificar qué pasaba y vio al señor Roldán agachado entre la esquina de la guagua y la pared. Ella le preguntó "¿Qué tu (sic.) estás haciendo?" Acto seguido, el señor Roldán le tiró un puño. La señora Tavárez testificó que cuando ella vio que el señor Roldán le iba a dar, se viró, y el puño recayó en su espalda. Continuó declarando que antes de que ella pudiese huir, el señor Roldán le propinó dos puños más en la espalda, un poco más abajo de donde fue el primero. La señora Tavárez salió corriendo y le dijo a su hija Lizmariel que llamara a la Policía, mientras el señor Roldán le gritó "si no me buscas cinco mil ($5,000) dólares, te voy a matar".(2)

Por su parte, Lizmariel, de quince años de edad, declaró que era hija de la señora Tavárez y el señor Roldán. El día de los hechos, vio a su papá a través de la ventana y fue a avisarle a su mamá. Luego, se dirigió a la cocina a prepararse almuerzo, y cuando regresó a la sala vio a su mamá con la cara escupida. Poco después, escuchó el ruido de la goma vaciándose y vio a su mamá salir de la casa a preguntarle al señor Roldán qué era lo que éste hacía. En ese momento, se dirigió a su cuarto y no salió de allí. Luego escuchó que su mamá le pidió que llamara a la Policía, y enseguida llamó al 911. Vio entonces a su mamá, quien ya estaba dentro de la casa llorando. Testificó que le vio la piel enrojecida en la parte de la espalda al ésta levantarse la camisa.

El tercer testigo lo fue el agente de la Policía que investigó el caso, Héctor Morales Pérez. Éste testificó que el día de los hechos atendió una querella de Ley Núm. 54, *supra*,

---

(2) Aparentemente, el señor Roldán se refería a un cheque por esa cantidad pagado a favor de ambos, y que la señora Tavárez había endosado, firmando tanto por ella como por su esposo. Éstos tenían un negocio de imprenta que habían administrado conjuntamente por varios años.

y que se personó en la casa de la señora Tavárez, en la que
ésta le narró lo sucedido. Testificó que antes de salir del
cuartel a investigar la querella, un señor había ido a que-
rellarse contra su esposa por un asunto relacionado a un
cheque.(3) Cuando la señora Távarez le narró lo sucedido,
se dio cuenta de que la persona que había visto en el cuar-
tel era el señor Roldán. Entonces regresó al cuartel y allí
mismo puso bajo arresto al señor Roldán por ser sospe-
choso de violar la Ley Núm. 54, *supra*. Luego de esto, el
agente acompañó a la señora Tavárez a fiscalía para que se
sometieran los cargos contra el recurrido.

El último testigo del Ministerio Público lo fue el Dr. Ar-
turo Silvagnoli Collazo. Éste declaró que era pediatra, y
que en los últimos años había ejercido medicina de familia.
Testificó que conocía a la señora Tavárez y que el 17 de
octubre de 1998 la examinó. Basado en el informe médico
que preparó el doctor Silvagnoli ese día, el cual fue admi-
tido en evidencia, éste declaró que la paciente presentaba
en la fecha del examen un hematoma en el área del hom-
bro derecho de tres centímetros por cuatro centímetros.
Encontró, además, un hematoma en el área intraescapular
(parte posterior del tórax, entre las escápulas) de cuatro
centímetros por dos centímetros. La señora Tavárez se
quejaba de dolor a la palpación en esas áreas, por lo que le
recetó el analgésico "Daypro".

Con esta prueba, el Jurado encontró al acusado culpable
del delito de Maltrato tipificado en el Art. 3.1 de la Ley
Núm. 54, *supra*. En apelación, el Tribunal de Circuito re-
voca esta convicción por entender que la prueba fue insu-
ficiente para configurar todos los elementos del delito de
maltrato.

De los testimonios vertidos en la vista del caso, se des-
prende claramente que el Ministerio Público ofreció prueba
de *todos* los elementos del delito imputado. Se estableció
que entre la víctima y el agresor existía un vínculo matri-

---

(3) Véase esc. 2.

monial y que éste la golpeó con tres puños en la espalda. El testimonio médico confirmó que la señora Tavárez efectivamente recibió dichos golpes, y al Jurado le mereció entera credibilidad el testimonio de la víctima sobre cómo ocurrieron los hechos.

El Tribunal de Circuito entendió que en estos casos es necesario presentar prueba sobre cuán intenso fue el golpe o la agresión para determinar si es capaz de causar daño. Este enfoque es totalmente erróneo y contrario a la política pública esbozada en la citada Ley Núm. 54. Como ya indicáramos, el grado o la intensidad de la agresión puede ser un factor que se ha de considerar para determinar la gravedad del delito o para decidir si a la persona agresora debe concedérsele el beneficio, por ejemplo, de un programa de desvío, pero bajo ningún supuesto de hecho o derecho la intensidad de la agresión es un factor determinante para decidir si se cometió o no el delito de maltrato. Si existe una agresión dirigida a causar daño, el delito queda configurado.

Por otra parte, se desprende claramente de los testimonios vertidos en la vista del caso la intención del señor Roldán de causar daño a la señora Tavárez. ¿Por qué otra razón iba a propinarle tres puños en la espalda? Además, la defensa tampoco ofreció razón alguna para aducir otra intención en la actuación del señor Roldán que no fuese la de causarle daño a la víctima. La actitud agresiva del señor Roldán al amenazar con matar a la señora Tavárez si no le buscaba los cinco mil dólares claramente avalan esta determinación.

▄  Por otra parte, el juzgador de los hechos, el Jurado, dirimió credibilidad y, en ausencia de una demostración de que hubo pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba hecha en instancia. *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454 (1988); *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Borrero*

*Robles*, 113 D.P.R. 387 (1982). Resulta evidente que el Jurado determinó que todos los elementos del delito, incluso la intención de causar daño, quedaron establecidos. Erró el foro apelativo al sustituir su criterio por el del juzgador de los hechos.

## IV

Por todos estos fundamentos, *se revoca la sentencia del Tribunal de Circuito de Apelaciones. Se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López no intervino.