# United States Court of Appeals
## For the First Circuit

No. 22-1687

UNITED STATES OF AMERICA,

Appellee,

v.

ÁNGEL MENÉNDEZ-MONTALVO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Kayatta, Lipez, and Thompson,
Circuit Judges.

Samuel P. Carrión, with whom Héctor L. Ramos-Vega and Franco
L. Pérez-Redondo were on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

December 12, 2023

**KAYATTA**, **Circuit Judge**.  While serving a term of supervised release arising from his conviction for a federal firearm offense, Ángel Menéndez-Montalvo ("Menéndez") breached the conditions of that release by violating Article 3.1 of Puerto Rico's Domestic Violence Law.  The calculation of the guidelines sentencing range for Menéndez's supervised release violation turned in relevant part on whether a violation of Article 3.1 is a "crime of violence" as that term is used in section 7B1.1(a)(1) of the United States Sentencing Guidelines.  For the following reasons, we find that it is not.  We therefore vacate Menéndez's sentence because the district court held to the contrary in calculating a guidelines sentencing range that was higher than it should have been.

## I.

On February 8, 2019, Menéndez pled guilty to illegal possession of a firearm by a person with a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1).  He received a sentence of 12 months and one day, of which he served only four months before beginning his three-year supervised release term on June 14, 2019.  The conditions of his supervised release prohibited Menéndez from "committing another federal, state, or local crime."  Menéndez breached those conditions by, among other things, violating

- 2 -

Article 3.1 of Puerto Rico Domestic Violence Law 54. Article 3.1 reads as follows:

> Any person who employs physical force or psychological abuse, intimidation, or persecution against his/her spouse, former spouse, or the person with whom he/she cohabits or has cohabited, or the person with whom he/she shares a child in common . . . in order to cause physical harm to the person, the property held in esteem by him/her . . . or to another person, or to cause serious emotional harm, shall be guilty of a fourth-degree felony . . . .

P.R. Laws Ann. tit. 8, § 631.

The issue thus posed and contested by the parties was whether Menéndez's violation of Article 3.1 was a Grade A or Grade B violation under Guidelines section 7B1.1(a)(i). The answer matters because while Menéndez's Grade A violation resulted in a Guidelines sentencing range of 15 to 22 months, he contends a Grade B violation would have carried a lower recommended range of 6 to 12 months.

Section 7B1.1(a)(1) provides in relevant part that "conduct constituting" an "offense . . . that . . . is a crime of violence" is a Grade A violation. As the commentary to section 7B1.1 explains, a "crime of violence" is defined in section 4B1.2, which states:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use,

attempted use, or threatened use of physical force against the person of another.

Menéndez offered two arguments for why a judge or jury could properly convict a person of violating Article 3.1 without having to find all the elements that define a crime of violence. First, he argued that Article 3.1 indivisibly includes both physical and psychological modalities, hence the offense could not be said to require physical force in all circumstances. Second, he argued that even if Article 3.1 is divisible into its physical and psychological versions as different offenses, the physical alternative does not require the type of violent physical force that is required to be a crime of violence.

In rejecting these arguments, the district court found first that Article 3.1 sets forth several divisible offenses, one of which required the use of "physical force." The court then detoured. Rather than asking whether the physical force element of that version of the Article 3.1 offense required the use of violent force sufficient to qualify as a crime of violence under U.S.S.G. § 4B1.2, the court found that Menéndez's actual conduct in fact involved the use of violent force. In the court's words, "I'm looking at the actual conduct that has been described here by the victim, which includes . . . punchings and beatings." Based on its finding of divisibility and its review of the defendant's conduct giving rise to the conviction, the district court concluded

that Menéndez had committed a Grade A violation and sentenced him to a term of 18 months imprisonment.

On appeal, Menéndez challenges both steps in the district court's reasoning. He first contends that the district court erred in finding that Article 3.1 is a divisible statute, with both physical and non-physical versions. He then argues that even if Article 3.1 is divisible, its physical version criminalizes the use of even de minimis force, which under controlling precedent is not "violent" force.

**II.**

"The question of whether an offense qualifies as a crime of violence is a quintessentially legal one, and our review is de novo." United States v. Martinez, 762 F.3d 127, 133 (1st Cir. 2014). We first give a brief overview of the legal framework at issue, and then examine the specifics of Menéndez's arguments on appeal.

The United States Sentencing Guidelines provide for three grades of supervised release violations, each of which carry different sentencing range recommendations. See U.S.S.G. § 7B1.1; United States v. Colón-Maldonado, 953 F.3d 1, 3 (1st Cir. 2020). A "Grade B" violation is defined as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(2). The higher "Grade A" violation, on the other hand, is triggered by

- 5 -

"conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, [or] (ii) is a controlled substance offense." U.S.S.G. § 7B1.1(a)(1). As it pertains to this case, the key distinction between a Grade A violation and a Grade B violation is whether the underlying conviction constitutes a "crime of violence," which the Sentencing Guidelines define as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -- has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

To determine what constitutes such a "crime of violence," courts apply what has come to be known as the categorical approach. See United States v. García-Cartagena, 953 F.3d 14, 21 (1st Cir. 2020). Under this approach, "the question turns not on whether the defendant in fact 'used, attempted to use, or threatened to use violent force in committing the crime as a matter of historical fact, but on whether the use, attempted use, or threatened use of violent force is required to satisfy one of the crime's elements.'" United States v. Williams, 80 F.4th 85, 89-90 (1st Cir. 2023) (quoting United States v. Starks, 861 F.3d 306, 315 (1st Cir. 2017)). And so a court must determine "whether the least serious conduct for which there is a 'realistic probability' of a charge and conviction necessarily involves the

- 6 -

use of violent force." Id. at 90. If it does not, then the statute is overbroad, which means that a court cannot automatically treat a violation of the statute as a "crime of violence" as necessary to support a finding of a Grade A violation. Starks, 861 F.3d at 315.

An overbroad statute, however, may still sustain a predicate offense if it is divisible. A statute is divisible where it "list[s] elements in the alternative, and thereby define[s] multiple crimes." Mathis v. United States, 579 U.S. 500, 505 (2016). For example a state law that prohibits "'the lawful entry or the unlawful entry' of a premises with intent to steal . . . creates two different offenses" -- one involving the element of lawful entry and one involving the element of unlawful entry. Id. If a statute is divisible, and "some of the alternative elements require the use, attempted use, or threatened use of physical force while others do not," courts thereby apply a "modified" categorical approach. King v. United States, 965 F.3d 60, 66 (1st Cir. 2020). Pursuant to this approach, a court looks to a "specific subset of materials, including the indictment and jury instructions, to determine which of the enumerated alternatives within the statue constituted the actual crime of conviction." Id. And if the actual crime of conviction "involves the use, attempted use, or

- 7 -

threatened use of physical force against the person or property of another, then the offense qualifies as a crime of violence." Id.

**A.**

Having established the legal background against which our analysis proceeds, we now turn to the merits of Menéndez's argument on appeal. Recall that in the proceedings below the district court read Article 3.1 as presenting at least two alternative offenses, one of which is limited to the use of physical force. We find this reading cogent and persuasive, particularly given the statute's use of the disjunctive "or." Further support for this conclusion is found in Puerto Rico's model jury instructions, which treat the physical and non-physical modalities of Article 3.1 as alternative offenses between which a prosecutor may pick and choose. See Proposed Jury Instructions Book, 390-93 § 14.2 (2008) (certified translation).

That being said, we need not and do not decide whether Article 3.1 divisibly includes as one of several offenses an offense limited to the use of physical force. Instead, as we will explain, even if Article 3.1 offers such an alternative, divisible offense, that offense is itself overbroad because the degree of force sufficient to support a conviction is less than the amount

of "physical force" necessary to satisfy the Guidelines' definition of a "crime of violence."

## B.

Assuming that Article 3.1 contains several divisible offenses, one of which has as an element the use of "physical force," we consider next whether the minimum physical force required to constitute an Article 3.1 offense satisfies the Guidelines' definition of a crime of violence. United States v. Faust, 853 F.3d 39, 51 (1st Cir. 2017). Before doing so, though, we reiterate the operational order the categorical approach requires in a case like this, as we previously explained in García-Cartagena, 953 F.3d at 20-27. The district court properly understood that where the Grade A classification turns not on a conviction for a crime of violence, but rather on whether a defendant engaged in conduct constituting such an offense, a court may need to examine the defendant's actual conduct to determine whether he did in fact commit the offense said to be a crime of violence.[1] However, a court engages in this fact-intensive analysis only if it first finds that the offense said to have been committed is categorically a crime of violence. See id. at 24.

As applied here, that mode of analysis required the district court to determine whether the force required to sustain

---

[1] This typically happens when the defendant has not already pled guilty to or been convicted of the underlying offense.

a conviction under Article 3.1 is at least equal to the "physical force" necessary to satisfy the Guidelines' definition of a "crime of violence." If not, then whether and how Menéndez actually committed the Article 3.1 offense is irrelevant to the question of whether he committed an offense that is a crime of violence. To reiterate, at this stage of the inquiry, the court must train its attention on the requisite elements of the offense, not the manner in which the offense was in fact committed. Id.

To that end, Menéndez contends that the physical-force version of Article 3.1 allows for a conviction based on de minimis force, which cannot constitute violent force as defined by the Guidelines. The Supreme Court considered a similar question in Johnson v. United States, 559 U.S. 133 (2010) -- whether a Florida law that criminalized simple battery, defined as "actually and intentionally touching" another person, was a "violent felony" under the Armed Career Criminal Act (ACCA). In relevant part, the ACCA provides for enhanced penalties for a person who violates 18 U.S.C. § 922(g) and has "three previous convictions" for "a violent felony." Id. at 136. The definition of a "violent felony" parrots the definition of a "crime of violence." See 18 U.S.C. § 924(e)(2)(B)(i) (defining violent felony as "any crime punishable by imprisonment for a term exceeding one year" that

"has as an element the use, attempted use, or threatened use of physical force against the person of another").

In its opinion, the Johnson Court clarified that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person." Id. at 140. It emphasized that "[w]hen the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." Id. Thus because the Florida Supreme Court had held that "the element of 'actually and intentionally touching' under Florida's battery law is satisfied by any intentional physical contact, 'no matter how slight,'" the state law was necessarily overbroad and could not serve as a predicate violent offense. Id. at 138-42.

Johnson dictates the result in this case. In the context of a definition of "crime of violence," the phrase "physical force" means violent force. By contrast, the Puerto Rico Supreme Court has been clear that Article 3.1 "does not . . . offer any gradation of physical force necessary for [a] crime to take place . . . . Any kind of physical force or violence, moderate or severe, is sufficient for this crime." Pueblo v. Roldán López, 158 D.P.R. 54, 58 (2002) (emphasizing that "[t]he gravity or severity of the physical force used . . . is not an element in determining whether the [offense] as such was committed or not"); see also Pueblo v.

Ayala García, 186 D.P.R. 196, 213 (2012) ("Article 3.1 does not demand that the physical force used is severe; any degree of force is sufficient to configure the offense if employed with the intention of causing damage." (emphasis added)). And as this circuit's precedent holds, where a state statute recognizes that "any physical force" is sufficient, then it cannot meet the definition of "violent felony" under federal law. United States v. Mulkern, 854 F.3d 87, 93-94 (1st Cir. 2017); id. at 93 ("The word 'any' is a powerful beacon to us here, making clear that the crime does not require a showing of force 'capable of causing physical pain or injury' -- something short of that will do.").

The government responds that this court's decision in United States v. Serrano-Mercado dictates that "the text of Article 3.1 suggests that something more than a mere non-consensual touching is required to satisfy" the element of physical force. 784 F.3d 838, 845 (1st Cir. 2015). In that case, the panel considered the law's requirement that the physical force be intended to cause "physical harm" together with the Puerto Rico Supreme Court's holding that "any degree of force is sufficient to configure the offense if . . . employed with the intention of causing some damage." Id. The panel found that distinction enough to "strongly suggest the statute's physical-force element involves the kind of violent force 'capable of causing physical pain or injury to another person.'" Id. But as this circuit has

subsequently emphasized, the Serrano-Mercado court "reviewed the issue [of divisibility] for plain error," and thus that portion of the opinion "wasn't a 'ruling on the merits.'" Colón-Maldonado, 953 F.3d at 7. It therefore does not demand a similar holding in this case.

The government argues that we should nevertheless find persuasive the Serrano-Mercado court's reasoning that intent to cause physical harm -- coupled with the use of any amount of force -- qualifies as violent force. But there is a distinction between a person's intent to do harm and the steps taken to carry out that intent. A person could, after all, intend to do someone harm even while ineffectually taking no actions that can reasonably be said to constitute "violent force -- that is, force capable of causing physical pain or injury to another person." United States v. Edwards, 857 F.3d 420, 423 (1st Cir. 2017). And it is a core tenet of our justice system that a defendant must have committed the prohibited act itself to merit criminal sanction. See United States v. Aguilar, 515 U.S. 593, 604 (1995) ("The actus reus element must be independently satisfied."). Adopting the government's proposed intent standard comes dangerously close to imposing liability based on a person's mindset alone.

The government responds that we have already considered whether intent to cause physical harm qualifies as violent force. It gestures to United States v. García-Ortiz, in which we held

- 13 -

that "[a] threat to poison another imposes a 'fear of injury' . . . to one's person," and that "placing someone in fear of bodily injury" constitutes violent force under Johnson.  904 F.3d 102, 107-08 (1st Cir. 2018).  But a threat to cause injury is quite clearly different from an intent to cause injury.  While the former typically requires some outward act, the latter can exist with no physical manifestation at all.  García-Ortiz is therefore an inapt comparison.[2]

The government also posits that Johnson "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality."  See Stokeling v. United States, 139 S. Ct. 544, 554 (2019).  But this argument confuses how likely an attempt is to succeed with the force used to effectuate that attempt.  Taking the government's argument to its logical conclusion, even a light touch might have the potential to cause physical pain or injury, however remote.  But that would therefore imply that a mere touch

---

[2] And to the extent the government is arguing that García-Ortiz stands for the proposition that a threat alone, regardless of the degree of force threatened, constitutes a crime of violence, we also remain unconvinced.  The court in García-Ortiz was careful to note that "a threat to poison someone involves the threatened use of force capable of causing physical injury, and thus does involve violent force."  904 F.3d at 107 (emphasis added).  Central to its reasoning, therefore, was the fact that the content of the threat was of a violent nature, rather than the mere fact of the threat's existence.

- 14 -

constitutes violent force -- exactly what the Supreme Court rejected in Johnson.

Finally, the government faults Menéndez for failing to point to any cases in which a Puerto Rico court has applied Article 3.1 to convict the use of de minimis physical force. Certainly the categorical approach requires "a realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside" the ambit of what is defined in the Sentencing Guidelines. Moncrieffe v. Holder, 569 U.S. 184, 191 (2013). And, at least when the state statute may not be obviously overbroad, that typically requires the assurance provided by "cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007); see also Da Graca v. Garland, 23 F.4th 106, 113 (1st Cir. 2022) ("[W]here a state statute is 'plainly' overbroad, a petitioner need not produce an actual case to satisfy the realistic probability test." (quoting Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017)).

Here, though, it appears that Puerto Rico courts have applied the law to encompass the kind of less-than-violent force for which Menéndez argues. See Pueblo v. Figueroa Santana, 154 D.P.R. 717, 731 (2001) (Article 3.1 "ensure[s] aggressions between couples, however insignificant they may seem, . . . are not

- 15 -

considered as small or minor crimes" and extends to altercation in which "the physical damage caused to the victim . . . was minimal"); Roldán López, 158 D.P.R. at 56 (lower court erred in overturning a conviction based on prosecution's failure to "present evidence to establish that . . . a violent blow was actually inflicted . . capable of attempting or causing harm"); id. at 61 (lower court's holding that "it is necessary to present evidence about how intense the blow or assault was to determine if it is capable of causing harm" was "totally wrong and contrary to . . . public policy"). That is enough to demonstrate a "realistic probability" that Puerto Rico applies Article 3.1 in a way that precludes the law's use as a predicate offense for a Grade A violation.

### III.

We recognize that, as the foregoing illustrates, the law governing this issue of sentencing may seem counterintuitive. Given that the obvious aim of the Grade A classification is to propose longer sentences for felonies committed with violent force, and given the need to assess conduct in determining whether a defendant has committed the alleged violation, one might well think that a finding that the conduct includes clearly violent force would suffice to warrant a Grade A classification. But

neither Congress nor the Sentencing Commission opted for such an approach.

None of this is to say that the district court on remand may not consider Menéndez's conduct while on supervised release as it bears on the factors specified in 18 U.S.C. § 3583(e), which include "the nature and circumstances of the offense and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). Accordingly, when making its final sentencing calculus, the district court has "wide discretion" to weigh the "serious nature of [Menéndez's] domestic violence offense and the circumstances surrounding it." United States v. Daoust, 888 F.3d 571, 576-77 (1st Cir. 2018). The ascertainment of a sentence, though, need begin with a proper classification of the violation, and that classification requires an assessment of the elements of the offense said to have been committed rather than the means by which it was committed. For that reason, we vacate the sentence and remand to the district court for further proceedings consistent with this opinion.

Given the possibility that the district court in its discretion may (but need not) issue a shorter sentence on remand, if the government knows that it is not going to seek rehearing it shall so promptly inform the court of appeals clerk so that the mandate may then be issued forthwith.