# United States Court of Appeals
## For the First Circuit

No. 24-1910

UNITED STATES,

Appellee,

v.

RICHARD PIMENTAL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvo,
Circuit Judges.

    Christine DeMaso, Assistant Federal Public Defender, for appellant.

    Mark T. Quinlivan, Assistant United States Attorney, with whom Leah B. Foley, United States Attorney, was on brief, for appellee.

May 20, 2026

**MONTECALVO, Circuit Judge**. Richard Pimental challenges the procedural reasonableness of his enhanced criminal sentence as a "career offender." In September 2024, after Pimental entered a guilty plea for federal bank robbery, the U.S. District Court for the District of Massachusetts sentenced him to 120 months in prison. At sentencing, the court considered whether Pimental qualified as a "career offender" under the United States Sentencing Guidelines ("the guidelines"). The guidelines define a "career offender" as an individual with at least two prior felony convictions for "crime[s] of violence." U.S.S.G. § 4B1.1(a). Concluding that Pimental's prior state conviction for carjacking constituted a crime of violence, and accepting his concession that his prior federal conviction for bank robbery was also a crime of violence, the court applied the career offender enhancement.[1]

On appeal, Pimental argues that his enhanced sentence as a career offender is procedurally unreasonable because the district court erroneously determined that his state-law carjacking conviction was a crime of violence. We agree. For the reasons explained below, we conclude that Pimental's designation as a career offender was in error. Accordingly, we vacate his sentence and remand to the district court for resentencing.

---

[1] As we will explain later, the career offender enhancement is found in section 4B1.1 of the guidelines. The "crime of violence" definition, in turn, is found in section 4B1.2(a).

## I. Background

On March 25, 2024, Pimental pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). Before sentencing, the U.S. Probation Office ("Probation") prepared a Presentence Investigation Report ("PSR") laying out the sentencing guidelines range for Pimental's offense. In the PSR, Probation calculated his total offense level to be twenty-one and his criminal history category to be V, resulting in a guidelines sentencing range of seventy to eighty-seven months' imprisonment.

The government objected to the PSR's failure to apply the guidelines' career offender enhancement (section 4B1.1) to Pimental's sentence. It contended that two of Pimental's past felony convictions amounted to "crime[s] of violence" as that term appears in the corresponding definitions section of the guidelines (section 4B1.2(a)), thus triggering the enhancement. Relevant to this appeal, one of these convictions was Pimental's 2000 conviction for Massachusetts carjacking.[2] Massachusetts law defines carjacking as follows:

> Whoever, with intent to steal a motor vehicle, assaults, confines, maims or puts any person in fear for the purpose of stealing a motor vehicle shall, whether he succeeds or fails in the perpetration of stealing the motor vehicle[,] be punished by imprisonment in the

---

[2] The government also identified Pimental's 2000 conviction for federal bank robbery, in violation of 18 U.S.C. § 2113(a). Pimental conceded that this is a crime of violence. He does not challenge that determination on appeal.

state prison for not more than fifteen years or in a jail or house of correction for not more than two and one-half years and a fine of not less than one thousand nor more than fifteen thousand dollars . . . .[3]

Mass. Gen. Laws ch. 265, § 21A.

Probation agreed with the government's claim that Pimental's two past convictions constituted crimes of violence and modified the PSR to categorize Pimental as a career offender.  It accordingly changed Pimental's new total offense level to twenty-nine and his new criminal history category to VI.  These modifications resulted in a new guidelines range of 151 to 188 months' imprisonment -- approximately doubling the prior guidelines range.

At Pimental's sentencing hearing on September 19, 2024, he objected to the career offender enhancement.  He argued that this enhancement did not apply to him because his prior conviction for Massachusetts carjacking is not a crime of violence as defined by section 4B1.2(a).  The government countered that the career offender enhancement did apply, pointing to Commonwealth v. Anderson, 963 N.E.2d 704 (Mass. 2012), a Massachusetts Supreme Judicial Court ("SJC") case concerning a sentencing enhancement under a different statute, the Massachusetts cognate of the Armed

---

[3] This statute also provides enhanced penalties for those who commit the offense while "armed with a dangerous weapon" or "a firearm."  See Mass. Gen. Laws ch. 265, § 21A.  These statutory alternatives are not relevant here, so we do not discuss them.

- 4 -

Career Criminal Act ("Massachusetts ACCA"), for support. Arguing that Anderson "control[led]" the analysis before the district court, the government directed the judge to a passage in Anderson where the SJC stated that carjacking "has as an element the use, attempted use or threatened use of physical force," id. at 712, and would unquestionably be a "violent crime" under the Massachusetts ACCA "if committed by an adult."

The district court agreed with the government, concluding that Massachusetts carjacking is a crime of violence under section 4B1.2(a) and thus applying the career offender enhancement. It acknowledged that the issue was preserved for appeal.

The government recommended a 151-month sentence, while Pimental argued for a seventy-month sentence. The district court sentenced Pimental to 120 months' imprisonment, followed by three years of supervised release. Pimental timely appealed.

## II. Standard of Review

We review preserved claims of sentencing error for an abuse of discretion, examining the district court's factfinding for clear error and "its interpretation and application of the sentencing guidelines" de novo. United States v. Mendes, 107 F.4th 22, 28 (1st Cir. 2024) (citing United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)). On appeal, the parties dispute whether the district court erred in determining that Pimental's

Massachusetts carjacking conviction constitutes a "crime of violence" under the guidelines. "Whether a prior conviction qualifies as a 'crime of violence' is a question of law that, if preserved, we review de novo." United States v. Williams, 80 F.4th 85, 89 (1st Cir. 2023) (citing United States v. Almenas, 553 F.3d 27, 31 (1st Cir. 2009)). Because Pimental objected to the application of the career offender enhancement before the district court, arguing that his carjacking conviction was not a "crime of violence," we review this preserved claim of error de novo.

### III. Discussion

Turning to our analysis, to determine whether Pimental's Massachusetts carjacking conviction is a crime of violence under section 4B1.2(a), we utilize the "categorical approach." See United States v. Menéndez-Montalvo, 88 F.4th 326, 329 (1st Cir. 2023). Under this approach, we consider "whether the elements of the defendant's crime of conviction necessarily require the use, attempted use, or threatened use of physical force against another person," as required by section 4B1.2(a). United States v. Frates, 896 F.3d 93, 97 (1st Cir. 2018). We will discuss the nature of our categorical analysis more later, but before we do, we first consider the career offender enhancement at the heart of this appeal and the parties' threshold arguments about Anderson.

## A. The Career Offender Enhancement

Found in section 4B1.1, the career offender enhancement "imposes increased criminal history categories and base offense levels on qualifying defendants." Thompson v. United States, 64 F.4th 412, 418 (1st Cir. 2023). This enhancement applies if:

> (1) the defendant was at least eighteen years old at the time [they] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (emphases added).

The guidelines define "crime of violence" to mean, in relevant part:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--(1) has as an element the use, attempted use, or threatened use of physical force against the person of another.

Id. § 4B1.2(a)(1) (emphasis added).

Subsection one of this definition, quoted above, is called the "force clause."[4] Frates, 896 F.3d at 96 (citation

---

[4] Subsection two enumerates several offenses, including "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a)(2). If such offense is punishable for more than one year, it qualifies as a "crime of violence." Id. Subsection two is not implicated by this appeal.

modified). The Supreme Court has held that "physical force" in the Armed Career Criminal Act's ("federal ACCA") definition of a "violent felony" refers to "violent force -- that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) (citing Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003)). We have previously explained that the federal ACCA's "violent felony" definition includes a force clause identical to the one found in the guidelines' "crime of violence" definition. Frates, 896 F.3d at 96. And our interpretation of one typically informs our application of the other. See, e.g., id. at 97; see generally United States v. Willings, 588 F.3d 56 (1st Cir. 2009).

## B. Commonwealth v. Anderson

Having set forth this background, we turn now to the parties' threshold contention: whether and how the SJC's 2012 decision in Commonwealth v. Anderson shapes our analysis. Because their arguments rely heavily on a particular passage from that case ("the disputed language"), we include it in its entirety. In Anderson, the SJC stated:

> The elements of the offense of carjacking are that a defendant (1) with intent to steal a motor vehicle, (2) assaults, confines, maims, or puts any person in fear, (3) for the purpose of stealing the motor vehicle. G.L. c. 265, § 21A. Therefore, the offense of carjacking "has as an element the use, attempted use or threatened use of physical force . . . against the person of another." G.L. c. 140, § 121.

- 8 -

> Because carjacking is a crime punishable by imprisonment for a term exceeding one year, there is no question that, if committed by an adult, it would constitute a "violent crime" that may be applied to enhance a sentence under [the Massachusetts ACCA]. But if it were committed by a juvenile and deemed an "act of juvenile delinquency," it would constitute a "violent crime" only where it involved "the use or possession of a deadly weapon," which the carjacking committed by the defendant did not.

Anderson, 963 N.E.2d at 715 (first alteration in original) (emphasis added).

On appeal, the government highlights the SJC's statement that Massachusetts carjacking "has as an element the use, attempted use, or threatened use of physical force," and would unquestionably be a "violent crime" under the Massachusetts ACCA if committed by an adult. See id. It contends that because this court is "bound by the construction of state law rendered by the highest court of the state," see United States v. Holloway, 630 F.3d 252, 259 (1st Cir. 2011), and because "physical force" has the same meaning in the Massachusetts ACCA context in Anderson as in the guidelines context here,[5] Massachusetts carjacking is categorically a "crime of violence" under the guidelines.

---

[5] The government argues that "physical force" as used in the Massachusetts ACCA has the same meaning in the federal ACCA. See Commonwealth v. Eberhart, 965 N.E.2d 791, 798-99 (Mass. 2012). And this court, it argues, has recognized "that the terms 'crime of violence' under the career offender guideline and 'violent felony' under the [federal] ACCA are nearly identical in meaning," and thus "decisions construing one term inform the construction of

Pimental counters that the language that the government relies on in Anderson is merely dicta because the defendant in that case "did not argue, and the SJC did not examine[,] whether an adult conviction for carjacking would be a predicate under the Massachusetts ACCA." Even if the disputed language were not dicta, Pimental argues that we need not defer to it because of the Supreme Court's holding in Johnson v. United States and subsequent decisions of this court. We first consider the dicta arguments before turning to Pimental's argument in the alternative.

### i. **Dicta and Considered Dicta**

To analyze whether the disputed language is dicta, further context is needed. In Anderson, the SJC considered whether a defendant's Massachusetts "youthful offender adjudication for carjacking" constituted a prior "violent crime" for a sentencing enhancement under the Massachusetts ACCA. 963 N.E.2d at 707-08. The Massachusetts ACCA defines a "violent crime," in relevant part, as "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or possession of a deadly weapon" that would be punishable for more than a year if committed by an adult, that "has as an element the

---

the other." United States v. Willings, 588 F.3d 56, 58 n.2 (1st Cir. 2009). The government implies that the SJC's interpretation of the Massachusetts ACCA's force clause is therefore authoritative in our interpretation of the guidelines' force clause at issue here.

- 10 -

use, attempted use or threatened use of physical force or a deadly weapon against the person of another." Mass. Gen. Laws ch. 269, § 10G(e) (cross-referencing Mass. Gen. Laws ch. 140, § 121) (emphases added). Because the defendant's youthful offender adjudication for carjacking did not involve a deadly weapon, the enhancement would have only applied if it constituted a "crime." See Anderson, 963 N.E.2d at 717.

The SJC, in rejecting the government's argument that the defendant's conviction was a "crime," pointed to the Massachusetts Legislature's intent when authorizing the indictment of certain juveniles as "youthful offenders." See id. at 715-16. Although a youthful offender adjudication allowed for "more severe penalties," the SJC concluded that it did "not transform [the defendant's] illegal act from an act of delinquency into a crime." Id. at 716. Because the defendant's carjacking conviction was neither a crime nor an act of juvenile delinquency involving a deadly weapon, the SJC held that it was not a conviction of a "violent crime" and thus had been erroneously used as a predicate conviction to enhance the defendant's sentence under the Massachusetts ACCA. Id. at 717.

Turning to the legal standards guiding our analysis here, statements "essential to the result reached in the case" and "those portions of the opinion necessary to the result" constitute the case's binding holding. Arcam Pharm. Corp. v. Faria, 513 F.3d

- 11 -

1, 3 (1st Cir. 2007) (quoting Rossiter v. Potter, 357 F.3d 26, 31 (1st Cir. 2004) in the first instance). A court's observations "that are not essential to the determination of the legal questions" before it, in contrast, are non-binding dicta. Id. (citation modified). Where judicial statements appear merely as a "passing reference without substantive reasoning," we generally have "no trouble concluding" that they are dicta. See Rosa v. Garland, 114 F.4th 1, 18 n.6 (1st Cir. 2024).

Applying this standard here, we note that the central question before the SJC in Anderson was not whether Massachusetts carjacking necessarily requires physical force. Rather, it was whether the defendant's youthful offender adjudication constituted a crime. This casts serious doubt on the government's contention that the disputed language from Anderson, which references the force clause, was part of the SJC's holding in that case, as it was not essential to answering "the legal question[] then before the court." See Faria, 513 F.3d at 3 (citation modified).

The government next argues that even if the disputed language was not part of the SJC's holding, it is "considered dicta" that binds this court. Pimental counters that this court is not bound by the SJC's considered dicta, and that anyways, the disputed language was not "considered" because the SJC provided no discussion of the crime of violence standards nor explanation of why carjacking necessarily requires violent force.

- 12 -

Dicta may constitute considered dicta when it is "clear and explicit in its import." See Posadas de P.R. Assocs., Inc. v. Asociacion de Empleados de Casino de P.R., 873 F.2d 479, 482 (1st Cir. 1989). And surely, we treat considered dicta from a state's highest court interpreting its state laws with deference. See id. But we are not convinced that the disputed language from Anderson is so "clear and explicit in its import" to constitute considered dicta. See id. On one hand, the SJC's rather straightforward statement that "carjacking 'has as an element the use, attempted use or threatened use of physical force'" and observation that carjacking by an adult would be a violent crime seem to weigh in favor of the government's argument. See Anderson, 963 N.E.2d at 715. But the nature of this conclusory statement, which does not analyze why carjacking necessarily involves physical force nor reference relevant caselaw, provides an important counterweight in favor of Pimental's contention that this dictum is in no way considered.

Ultimately, the disputed language in Anderson is far from central to the result in that case, and, assuming without deciding that it is dicta, we have serious doubts that it was "considered" dicta. But because we agree with Pimental's alternative contention, we need not definitively resolve these questions and leave them for future resolution in the capable hands of the SJC. We turn now to Pimental's alternative argument.

- 13 -

## ii. **Johnson** and **Starks**

Pimental asserts that even if the disputed language in Anderson is not dicta, Johnson and subsequent decisions of this court instruct that we need not defer to it -- and indeed, that we must independently determine the proper application of the federal sentencing enhancement before us.

In Johnson, the defendant appealed his sentencing enhancement under the federal ACCA on the basis that his prior conviction for simple battery under Florida law did not amount to a "violent felony." 559 U.S. at 135-37. The defendant argued that the Supreme Court was bound by the Florida Supreme Court's determination that Florida battery on a law enforcement officer, "which require[d] the same conduct . . . as [simple] battery," did not require the threat or use of "physical force" under Florida's state analog to the federal ACCA. Id. at 137-38.

Despite similarities between the federal ACCA and Florida's state analog, the Supreme Court rejected Johnson's argument and applied the categorical approach without deference to the Florida Supreme Court's holding. See id. Although it was bound by the state's highest court for "interpretation of state law, including its determination of the elements," the Court held that the meaning of "physical force" in the federal ACCA "[was] a question of federal law, not state law." Id. at 138. To answer that question, it clarified that it was "not bound by a state

court's interpretation of a similar -- or even identical -- state statute." Id.

In line with Johnson, this circuit confirmed in United States v. Starks that when conducting our categorical analysis, "[w]e rely on state law for the elements of the crime and what conduct satisfies those elements." 861 F.3d 306, 315 (1st Cir. 2017). But "in determining whether the least serious conduct that satisfies those elements" is a categorical match with a federal sentencing enhancement, "we interpret a federal statute and do not defer to state law." Id. at 315-16 (determining whether a defendant's Massachusetts robbery convictions were violent felonies under the federal ACCA).

The question before us -- whether the least serious conduct that satisfies the elements of Massachusetts carjacking necessarily satisfies the force clause of the federal career offender enhancement -- is like the question before the Supreme Court in Johnson and this court in Starks. Just as in those cases, we too are tasked with determining whether a defendant's conviction under state law requires the application of a federal sentencing enhancement. Notwithstanding the parallels that the government stresses between the Massachusetts ACCA enhancement in Anderson and the federal career offender enhancement here,[6] under Johnson,

<hr />

[6] Recall that the government argues that because "physical force" has the same meaning in the Massachusetts ACCA and the

- 15 -

in interpreting the question of federal law before us, we owe no deference to state court interpretations of a "similar" or even "identical" state statute. See Johnson, 559 U.S. at 138.

But we do, of course, look to state law "for the elements of the crime and what conduct satisfies those elements." Starks, 861 F.3d at 315. As discussed, the SJC in Anderson had no occasion to evaluate what conduct satisfies the elements of carjacking,[7] and so we look to the statute and other Massachusetts caselaw for guidance. See 963 N.E.2d at 715-17.

Contrary to the government's contention, we conclude that Anderson does not doom Pimental's arguments. Having clarified this issue, we proceed to our categorical analysis.

## C. Categorical Analysis

Recall that under the categorical approach, we compare Pimental's Massachusetts carjacking conviction to the guidelines' crime of violence definition. In so doing, we "examine the

---

federal ACCA, and since this court has recognized that "the force clauses of the [federal] ACCA and career offender guideline are identical," we are bound by the SJC's pronouncements in Anderson.

[7] For the elements of carjacking, the SJC in Anderson referred directly to the carjacking statute at chapter 265, section 21A of the Massachusetts General Laws. See 963 N.E.2d at 715. And we do not understand the SJC's statement that "the offense of carjacking 'has as an element the use, attempted use or threatened use of physical force,'" to have enunciated a new element, where it was directly quoting the Massachusetts "violent crime" definition, and had just listed the three statutory elements of carjacking one sentence prior. See id. (quoting Mass. Gen. Laws, ch. 140, § 121).

- 16 -

elements" of carjacking "rather than the conduct that this particular defendant engaged in [when] committing the offense." United States v. Ellison, 866 F.3d 32, 35 (1st Cir. 2017). We first ask "whether the least serious conduct for which there is a 'realistic probability' of a charge and conviction" for Massachusetts carjacking "necessarily involves the use of violent force." See Starks, 861 F.3d at 315 (quoting Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)). If the answer is yes, Massachusetts carjacking is categorically a crime of violence and will count as a career offender predicate. See United States v. Faust, 853 F.3d 39, 51 (1st Cir. 2017). If the answer is no, the statute is "overbroad" compared to the sentencing enhancement's crime of violence definition because it "criminalizes both covered and non-covered conduct." United States v. García-Cartagena, 953 F.3d 14, 18 (1st Cir. 2020). In that case, no categorical match exists, and the conviction is not a crime of violence for career offender enhancement purposes.[8]

Turning to the elements of Massachusetts carjacking, as summarized by the SJC, carjacking occurs when "a defendant (1) with intent to steal a motor vehicle, (2) assaults, confines, maims or

---

[8] If a statute is overbroad, it "may still sustain a predicate offense," but only if it is "divisible." Menéndez-Montalvo, 88 F.4th at 330. Because the government concedes that it did not carry its burden in demonstrating that Pimental's Massachusetts carjacking conviction concerned a divisible statute, we accept this concession without deciding the issue.

- 17 -

puts any person in fear, (3) for the purpose of stealing the motor vehicle." Anderson, 963 N.E.2d at 715 (emphases added) (citing Mass. Gen. Laws, ch. 265, § 21A). For a categorical match to exist, all four alternative means of commission -- assaulting, confining, maiming, or putting any person in fear -- must "necessarily require the use, attempted use, or threatened use of physical force against another person." Frates, 896 F.3d at 97. Put differently, if any one of the means of commission do not necessarily implicate the force clause, there is no categorical match.

Pimental argues that the Massachusetts carjacking statute is "plainly [broader]" than the guidelines' crime of violence definition. That is so, he asserts, because three of these statutory alternatives -- assaulting, confining, and putting any person in fear -- "do not require the use, attempted use, or threatened use of violent force against a person." As to the first alternative, Pimental argues that "assault" under Massachusetts law can be accomplished "by a mere touching." He additionally argues that "confine," as defined by Massachusetts courts' model jury instructions, includes "any restraint of a person's liberty." See Massachusetts Superior Court Criminal Jury Instructions § 3.17 at 3-135 (MCLE, Inc. 3d ed. 2018). This, he argues, could be accomplished by "locking someone in their home to steal their car." Finally, he argues that "put in fear" could be "satisfied if the

- 18 -

victim feared loss of a car, economic harm, or reputational harm."
Because none of these require the use, attempted use, or threatened
use of violent force, Pimental argues that the Massachusetts
carjacking statute is plainly overbroad.

The government counters that Pimental errs by reading
"assault," "confine," and "put in fear" in isolation. It argues
that our decision in United States v. Edwards, 857 F.3d 420, 424-25
(1st Cir. 2017), prohibits this. It insists that reading these
terms "in the context of the other elements of the carjacking
statute" leads to the conclusion that the statute is not overbroad
compared to the force clause.

Finally, the parties disagree about whether Pimental
must point to a case example to show that there is a realistic
probability that Massachusetts carjacking extends to the sort of
conduct that he says it does.[9] Pimental argues that he need not
do so because the statute is "plainly overbroad."[10] See Da Graca,

_____

[9] The "realistic probability" requirement means that a mere
"theoretical possibility" that Massachusetts would apply its
carjacking statute to conduct falling outside the crime of violence
definition does not sufficiently indicate overbreadth. See
Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007).

[10] When "the state statute may not be obviously overbroad," a
defendant typically must point to a case in which "state courts in
fact did apply the statute in the special (nongeneric) manner for
which he argues." Menéndez-Montalvo, 88 F.4th at 333 (quoting
Duenas-Alvarez, 549 U.S. at 193). But "where a [state] statute is
facially broader than its generic [federal] counterpart," -- here,
the guidelines' crime of violence definition -- a defendant need
not point to such a case. Da Graca v. Garland, 23 F.4th 106, 113

- 19 -

23 F.4th at 113-14; Swaby, 847 F.3d at 66.  Alternatively, he argues that Commonwealth v. Pena, 656 N.E.2d 315 (Mass. App. Ct. 1995), provides just such an example.

We begin our analysis with the first means of commission listed in the Massachusetts carjacking statute: "assault." Pimental points to our decision in United States v. Martinez, 762 F.3d 127 (1st Cir. 2014), to argue that Massachusetts carjacking by assault can be committed by a "mere touching."  In Martinez, we considered whether a defendant's conviction for Massachusetts simple assault was a crime of violence under the guidelines.  Id. at 137-38.  An examination of state law revealed that the physical force required to commit simple assault encompassed threatened or attempted "offensive touching."  See id.  Although the government contended that the SJC's observations in other cases supported the notion that "mere offensive touching no longer suffice[d] to support a conviction for simple assault," we dispelled that argument as "at best[,] premature."  Id. at 137.  Certainly, the SJC had "occasionally suggested in dictum" that assault "might require a threat or attempt to cause physical harm."  Id. at 138. But because it had "never repudiated either the principle that assault is attempted or threatened battery or the principle that battery does not require violent force," we were "constrained to

_____

(1st Cir. 2022); see also Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017).

conclude that the Massachusetts assault statute criminalizes all that the SJC has said it [does], including mere touching if offensive." Id. Because this level of force was broader than the "violent force" required by the guidelines' force clause, we concluded that Massachusetts simple assault was not a categorical match with a crime of violence under the guidelines. Id. at 137-38.

Pimental argues that applying this definition here means that Massachusetts carjacking by "assault" could be committed through even a slight offensive touching. See id. at 138. Because an "offensive touching" does not necessarily entail the kind of "violent force" which can cause "physical pain or injury," he contends, Massachusetts carjacking, when committed by assault, would not categorically require the use, attempted use, or threatened use of physical force against the person of another. See Johnson, 559 U.S. at 140; see also Martinez, 762 F.3d at 138.

The government is notably silent as to Martinez. Indeed, it makes no argument that the scope of "assault" has changed since Martinez. Instead, it relies on our decision in Edwards for the premise that "assaults" must be read in context with the other elements of the carjacking statute. The Edwards defendant appealed a district court's finding that he had three "violent felonies"

under the federal ACCA.  857 F.3d at 421-22.[11]  One such conviction was for Massachusetts armed assault with intent to murder, which penalizes "[w]hoever, being armed with a dangerous weapon, assaults another with intent to . . . murder."  Id. at 423 (alterations in original) (quoting Mass. Gen. Laws ch. 265, § 18(b)).  The defendant in Edwards argued that assault is committed in Massachusetts through an attempted or immediately threatened battery, and that a battery amounts to a "harmful or offensive touching."  Id. at 424.  He maintained that his conviction thus could not serve as a violent felony under the federal ACCA because an offensive touching did not necessarily involve violent force.  Id.

In rejecting that argument, this court acknowledged that although Massachusetts simple assault could be accomplished merely by an offensive touching, the "specific intent to kill" requirement in Edwards's statute of conviction was critical.  Id. at 424-25 (citation modified).  This "murderous intent," when read in conjunction with the rest of the elements, compelled us to conclude

_____

[11] The federal ACCA defines a "violent felony," in relevant part, as a crime punishable by a year or more of prison that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B). "[P]hysical force," as used there, refers to "violent force -- that is, force capable of causing physical pain or injury to another person."  See Edwards, 857 F.3d at 423 (quoting Johnson, 559 U.S. at 140).  This language, notably, exactly mirrors the portion of section 4B1.2(a)'s "crime of violence" definition discussed in this opinion.

- 22 -

that it was "implausible that a defendant could be convicted . . . based on an offensive-touching approach." Id.

Our decision in United States v. Whindleton similarly informs our analysis. See 797 F.3d 105, 107 (1st Cir. 2015). In relevant part, the defendant there challenged his enhanced sentence on the basis that his Massachusetts conviction for assault with a dangerous weapon did not constitute a "violent felony" under the federal ACCA. Id. Critically, the statute defined that crime as "[w]hoever, by means of a dangerous weapon, commits an assault upon another." Id. at 112 (alteration in original) (quoting Mass. Gen. Laws ch. 265, § 15B(b)). We observed that Massachusetts defined a "dangerous weapon" to include weapons "designed and constructed to produce death or great bodily harm," as well as weapons that, as used, were "capable of producing serious bodily harm." Id. at 114 (quoting Commonwealth v. Tevlin, 741 N.E.2d 827, 833 (Mass. 2001)). Because it was logical that "the harm threatened by an assault [would be] far more violent than offensive touching when committed with [such] a weapon," we concluded that the dangerous weapon element "import[ed]" violent force "into the otherwise overbroad simple assault statute." Id.

Here, the government is correct that carjacking's commission element (assaults, confines, maims, or puts any person in fear) must be read alongside the other elements in the statute. See Edwards, 857 F.3d at 424-25. But doing so does not compel the

conclusion that Massachusetts carjacking requires the use, attempted use, or threatened use of violent force. Carjacking's other elements are "with intent to steal a motor vehicle" and "for the purpose of stealing a motor vehicle." See Mass. Gen. Laws ch. 265, § 21A. The government insists that courts have recognized carjacking as an "inherently violent offense." Yet we are not bound by the cases it cites,[12] and indeed, we must train our analysis on the statutory elements before us. The intent element in Edwards was a specific intent to kill, which we described as "murderous intent." 857 F.3d at 425. Conversely, carjacking merely requires that the defendant intend to permanently deprive someone of their car. See Mass. Gen. Laws ch. 265, § 21A; Commonwealth v. Furr, 907 N.E.2d 664, 671 (Mass. 2009). This intent element is satisfied even when "a defendant is clearly indifferent as to whether the owner of the vehicle ever recovered possession." Furr, 907 N.E.2d at 671. Notably, this standard

---

[12] The government cites a 2003 case, Commonwealth v. Furr, where the Massachusetts Appeals Court stated that "[c]arjacking and kidnapping are violent crimes by their nature, particularly when accomplished with the help of a sawed-off rifle." 788 N.E.2d 592, 597 (Mass. App. Ct. 2003). But the court's observation in Furr that a crime is violent by nature is not determinative. Instead, our analysis must focus on "a crime's elements, not the beliefs that may have led to the adoption of those elements." Starks, 861 F.3d at 319. The other cases that the government cites involve carjacking -- but they are out-of-circuit and do not concern the Massachusetts carjacking statute before us. See, e.g., United States v. Taylor, 226 F.3d 593, 597 (7th Cir. 2000) (referring to the "inherently violent character of carjackings").

- 24 -

does not require a showing of intent to cause someone physical harm, unlike the murderous intent required in Edwards.

Further, although in Whindleton, assault with a dangerous weapon "import[ed]" violent force into an otherwise overbroad simple assault because it could be committed only "by means of" a weapon capable of causing "serious bodily harm or death," the same is not so here. See 797 F.3d at 112, 114 (citation modified). Nothing in "intent to steal a motor vehicle" or "for the purpose of stealing a motor vehicle" necessarily requires violent force.

Even as we interpret "assault" alongside the other elements of Massachusetts carjacking, then, we conclude that it covers conduct that falls outside the bounds of the force clause. Because we need only conclude that a single means of commission encompasses conduct that does not necessarily implicate the force clause to determine that the statute is overbroad, our analysis begins and ends with "assault."[13]    And because we find the

_____

[13] Pimental argues that carjacking by confinement similarly sweeps in conduct that does not necessarily require the use, attempted use, or threatened use of physical force. He suggests, for example, that Massachusetts carjacking could be accomplished merely by "locking someone in their home to steal their car." At oral argument, building from this premise, the panel questioned whether locking someone in their bedroom while they were asleep and stealing their car would satisfy the "confines" element. Because such conduct would not require force upon the sleeping individual, this example may suggest that another means of commission for Massachusetts carjacking, "confines," might also cover conduct that does not necessarily implicate the force clause.

Massachusetts carjacking statute plainly overbroad, we do not address the parties' "realistic probability" arguments, supra.

### IV. Conclusion

We conclude that Massachusetts carjacking is not categorically a "crime of violence" under section 4B1.2(a)(1). Pimental's sentence was thus erroneously enhanced under the career offender enhancement, and we accordingly **vacate** his sentence and **remand** for resentencing.

---

Ultimately, because we need only find a single means of commission overbroad to reach the result here -- and we already have, with "assaults" -- we leave this question for another day.